BROWN BROADCAST, INC. v. PEPPER SOUND STUDIO,
INC. ET AL

5-4214                                              416 S. W. 2d 284

Opinion delivered May 29, 1967

[Rehearing denied July 26, 1967.]

Bob Dawson, for appellant.

Gordon & Gordon and Clark, Clark & Clark, for appellees.

PAUL WARD, Justice. This appeal comes from litigation involving the sale of a radio station (KVEE) located at Conway. The principal issue concerns what, if any, liabilities the purchaser assumed.

The original owners of the station prior to 1964 were J. C. Willis, Hugh C. Jones, Harold J. Nichols, and William E. Cooper (referred to as "Partners"). The purchaser was Brown Broadcast, Inc., appellant. The other party involved is Pepper Sound Studio, Inc.,

a corporation domiciled in Tennessee at Memphis, referred to as "Pepper".

On April 13, 1964 Partners and Pepper entered into a written contract designated as "Creative Sales Service Agreement", referred to as "contract". The contract obligated Pepper to lease to Partners certain "sound production and promotion materials" over a period of five years—to be used by Partners for one-minute-spot advertising purposes. For said service, the contract obligated Partners to pay Pepper $1,908 in equal monthly installments of $31.80.

On July 29, 1965 Partners sold the station to appellant, the sale being evidenced by a comprehensive written instrument.

A few months after the sale to appellant the monthly payments became delinquent and Pepper filed a complaint against appellant and Partners asking for specific performance of the contract against appellant or, in the alternative, for judgment against both defendants "for the sum of $31.80 per month for December, 1966 and each month thereafter in which plaintiff (Pepper) performs its contract to KVEE". Partners answered, denying they owed appellant anything and stating they had transferred the lease agreement and all other property rights in the station to appellant who agreed to assume the contract. Replying, appellant denied any knowledge of the contract, and stated it assumed no obligations therein contained. There were other pleadings but it is not necessary to refer to them at this time.

Upon trial, the court found: (a) Partners are not released from the contract; (b) appellant and Partners owe Pepper $381.60, being the balance due for materials furnished to the station; (c) Pepper is entitled to specific performance of the contract, and; (d) appellant owes Partners for balance of purchase price of the station.

On appeal, appellant relies on four separate points or assignments of error for a reversal. They will be rephrased, and may be sufficiently examined, as follows:

*One,* Pepper is a foreign corporation, not authorized to do business in Arkansas, and therefore is not permitted to use the courts of this State to enforce a contract in this State. *Two,* there is no competent testimony to show appellant assumed the contract. *Three,* Partners did not come into equity with clean hands and, therefore, are not entitled to any relief.

*One.* It is admitted that Pepper has not complied with Ark. Stat. Ann. § 64-1201 (Repl. 1966) by filing a copy of its charter with the Secretary of State. Based on this fact appellant contends Pepper has no right, under the provisions of Ark. Stat. Ann. § 64-1202 (Repl. 1966), to maintain this action. We do not agree. If the contract here sued on was made in Tennessee it was not necessary for Pepper to comply with the section first mentioned. It was so held and fully explained in *UPI* v. *Hernreich, d/b/a Station KZNG,* 241 Ark. 36, 406 S. W. 2d 317. In Pepper's complaint it is alleged that this contract was "accepted by plaintiff at his home in Memphis, Tennessee." Appellant, in its answer, admitted the above allegation was true. The notes, themselves, show they were executed in Memphis. We find no evidence in the record to show the contract was executed in Arkansas. In *UPI,* supra, we approved this statement:

> "'It has been said that the Arkansas Statute cannot apply to prevent actions on contracts not made in Arkansas, even though interstate commerce be not involved.' "

*Two.* It is here insisted by appellant, in essence, that the weight of the testimony does not sustain the finding by the trial court that appellant assumed the terms and obligations of the contract made by Pepper and Partners. Again, we cannot agree.

In the first place the sales contract between appellant and Partners, in paragraphs 1 and 1 (c), provides that the "Buyer (appellant) shall acquire from Sellers . . . all contracts, agreements, franchises, leases . . . in effect currently on or on closing date, except as provided in paragraphs 11 and 12 hereof". These two named paragraphs do not exclude the contract here in question. On the contrary, paragraph 11 recites that appellant shall assume all contracts and agreements "described in paragraph 1 (c) ". We think it is made clear that appellant had knowledge of the contract.

We think the record fully supports a finding by the trial court that appellant knew of the contract and assumed the same. Mr. Hill testified that Robin Brown, president of appellant, told him the stations were using services provided under the contract after October 1, 1965. He also testified that, at the time of the trial, the "spots" were being run to the satisfaction of Pepper.

*Three.* The trial court, under proper pleadings, also gave Partners judgment against appellant for the balance due under the sale of the station. The only objection by appellant to the court's action is that Partners did not come into a court of Equity with clean hands. The only basis for this objection are the matters previously discussed. Considering the conclusions already reached, we find nothing to justify us in holding Partners came into court without "clean hands". Nor do we find anything in the record which reflects unfavorably on Partners.

Affirmed.