Cass S. HOUGH, FORBING INVESTMENTS, INC., and TRANSPORTATION PROPERTIES, INC., d/b/a BEST WESTERN TOWN & COUNTRY MOTEL *v.* CONTINENTAL LEASING CORP. and Bill WEATHERFORD and Steve WEATHERFORD, d/b/a ACME TYPEWRITER EXCHANGE

81-253                                              630 S.W. 2d 19

Supreme Court of Arkansas
Opinion delivered March 22, 1982

*Slinkard & Lingle, P.A.,* by: *James G. Lingle,* for appellant and cross-appellee.

*Smith & Smith,* by: *Raymond C. Smith,* for appellee and cross-appellant.

ROBERT H. DUDLEY, Justice. Appellant Best Western Town and Country Motel in Rogers contacted Acme Typewriter Exchange in Fayetteville about acquiring two electronic cash registers. Both thought Victor brand machines should be installed and Acme contacted appellee Contin-

ental Leasing of Hattiesburg, Mississippi and asked if Continental would purchase the machines from Acme and then lease them to appellant. Continental Leasing, which had previously done no business in Arkansas and had no agents or employees in the state, sent Acme a credit application. Acme then forwarded the application to appellant. On the application appellant stated that it was a partnership composed of Cass S. Hough, R. A. Lile and Arnold L. Mayersohn. Continental Leasing investigated the partners and found that they had reputations as substantial businessmen. Continental then notified Acme that it would purchase the machines and lease them to appellant. Continental prepared an instrument with the following style:

## CONTINENTAL LEASING CORPORATION
### LESSOR
P. O. Box 333 / Forrest Towers / Hattiesburg, MS 39401

| Lessee No. | Rental Commencement Date |
|---|---|
| 1366-01 | May 15, 1978 |

Cass S. Hough executed the instrument for appellant and it was mailed back to Hattiesburg where it was accepted by Continental. Hough testified that he did not read the instrument and thought he signed a conditional sales agreement. He admitted, however, that he had his attorney examine the lease before executing it. The machines had been installed only a short period of time when appellant claimed they were not functioning properly and ceased to make the monthly rental payments. Continental filed suit for the entire unpaid balance, attorney's fees and possession of the property which, under the terms of the lease, could be sold with the proceeds to be applied to the judgment. Appellant contended that appellee was in violation of the Wingo Act and could not enforce its contract and, alternatively, the instrument was a usurious conditional sales agreement, rather than a true lease, and was void. A jury trial resulted in a judgment for appellee Continental but no attorney's fees were awarded. Both parties appeal and we affirm on appeal and cross-appeal.

The Wingo Act, Ark. Stat. Ann. § 64-1202 (Repl. 1980),

provides that a foreign corporation which does not file its articles of incorporation in this state cannot maintain a cause of action in this state. The act is not applicable to contracts in which the transaction is wholly in interstate commerce. *The W. T. Rawleigh Medical Co. v. Rose,* 133 Ark. 505, 202 S.W. 849 (1918); *Crenshaw v. Arkansas,* 227 U.S. 389 (1913). The trial court was correct in finding that the contract was made in Mississippi, where final acceptance occurred. As stated in *Goode v. Universal Plastics, Inc.,* 247 Ark. 442, 445 S.W. 2d 893 (1969):

> . . . The rule is stated in Leflar's *American Conflicts Law* (1969), § 144 at page 353:
>
>> The authorities are reasonably clear that, in this event, the contract is made at the time and place ·'where the last act necessary to the completion of the contract was done — that is, where the contract first creates a legal obligation.'

The contract was therefore a Mississippi contract in interstate commerce and Continental may enforce it in the courts of Arkansas despite its status as a nonqualifying corporation. *Brown Broadcast, Inc. v. Pepper Sound Studio, Inc.,* 242 Ark. 701, 416 S.W. 2d 284 (1967).

The jury upheld the contract as a lease and appellant contends that the trial court erred in not granting the motion for a directed verdict on the issue of usury. A directed verdict is proper only when no fact issue exists and, on appeal, we determine whether a fact issue existed by examining the evidence in the light most favorable to the appellee and affirm if there is any substantial evidence to support the verdict. *Midwest Bus Lines, Inc. v. Williams,* 243 Ark. 854, 422 S.W. 2d 869 (1968); Rule 52, A. R. Civ. P. Here, there was substantial evidence that the instrument was a lease and not a disguised conditional sales contract and, accordingly, we affirm.

Appellant validly contends that the contract in issue, a five year lease, is in many respects similar to the ostensible leases found to be usurious in *Standard Leasing Corp.* v.

*Schmidt Aviation,* 264 Ark. 851, 576 S.W. 2d 181 (1979) and *Bell* v. *Itek Leasing Corp.,* 262 Ark. 22, 555 S.W. 2d 1 (1977). There are, however, significant differences upon which the jury could base its verdict. The lessee acquired no equity in the property as the lease expressly provided for the return of the equipment to the lessor at the end of the term, or that it be sold and the proceeds go to the lessor. There was no provision for an option to purchase. These facts are substantial evidence from which the jury could find that the intention of the parties was that at the expiration of the lease term the property would revert back to the lessor.

Appellant additionally contends that the trial court erred in refusing to give two instructions. The trial court was correct in its ruling. One of the proposed instructions is a slanted paraphrasing of the language in *Bell* v. *Itek Leasing Corp.,* supra, and *Standard Leasing Corp.* v. *Schmidt Aviation,* supra. An instruction must be unslanted. To be unslanted the instructions must be an objective statement of the law. AMI Introduction, p. X. The trial court refused the other because the court's own instruction covered the subject. A party is not entitled to his particular preference in the wording of the instructions and a trial judge is not required to say the same thing again in different words. *Sanders* v. *Neuman Drilling Co.,* 273 Ark. 416, 619 S.W. 2d 674 (1981). The appellant also contends that the trial court committed reversible error in not submitting the case to the jury upon appellant's requested 16 special interrogatories. Whether to submit or refuse to submit a case on special interrogatories to be answered along with a general verdict is discretionary with the trial court. *Missouri Pacific Transportation Co.* v. *Parker,* 200 Ark. 620, 140 S.W. 2d 997 (1940). We find no abuse of discretion for refusing the 16 special interrogatories submitted in this case.

On cross-appeal Continental Leasing contends that it should have been allowed attorney's fees. We affirm the trial court's denial of attorney's fees. In an early case we held void a penalty provision in a promissory note for payment of an attorney's fee, *Boozer* v. *Anderson,* 42 Ark. 167 (1883). We did not allow attorney's fees on promissory notes until a statute so provided. Ark. Stat. Ann. § 68-910 (Repl. 1979); *Hollaway*

v. *Pocahontas Federal Savings & Loan Ass'n.*, 230 Ark. 310, 323 S.W. 2d 204 (1959). We have consistently followed the concept that the allowance of attorney's fees as costs is in substance statutory. Light, *Taxability of Attorney's Fees as Costs,* 9 Ark. L. Rev. 70 (1955). No statute authorizes attorney's fees for default on a lease. Until the General Assembly provides otherwise, we will adhere to the sound common law concept of each litigant bearing the cost of his own counsel.

Affirmed on appeal and cross-appeal.