**CONSOLIDATED NATURALS, INC., an Arkansas Corporation; and M & M Sales, Inc., an Arkansas Corporation, Plaintiffs,**

v.

**WM. T. THOMPSON CO., a Missouri Corporation, Defendant.**

**Civ. No. 85–5140.**

United States District Court, W.D. Arkansas, Fayetteville Division.

Dec. 5, 1985.

Ronald L. Boyer, of Croxton & Boyer, Rogers, Ark., for plaintiffs.

Hillary Rodham Clinton and Jerry C. Jones, of Rose Law Firm, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

The issue before the court is whether this matter should be stayed pending arbitration of the disputes which have arisen as a result of two separate contracts entered into between the plaintiffs and the defendant. The first of the contracts between plaintiff, Consolidated Naturals, Inc. (Consolidated), appoints Consolidated "as a non-exclusive distributor to sell and distribute Thompson's products to companies and firms such as retailers which resell the products to retail customers." In the agreement, Consolidated agrees to purchase certain products from defendant, Wm. T. Thompson Co. (Thompson), and to do the things necessary to distribute these products to retailers. The second contract, dated November 2, 1984, purports to appoint the other plaintiff, M & M Sales, Inc. (M & M), as Thompson's broker with the exclusive right to act as its broker within a prescribed territory. The agreement provides that the broker will maintain a business organization necessary to solicit and promote the sale of Thompson products, and that the broker will be paid for its services "a commission of five percent (5%) of the net invoice value of shipments by Broker of Thompson products to retailers and distributors located in the Territory."

The two contracts contain identical arbitration clauses as follows:

10. Any dispute between the parties hereto arising under or out of this Agree-

ment shall be settled by arbitration under the then applicable Commercial Arbitration Rules of the American Arbitration Association, which shall govern the method of selecting arbitrators and the procedure of the arbitration. All arbitration proceedings shall be conducted in Los Angeles, California. Any award made pursuant to arbitration may be entered as a judgement by any court of competent jurisdiction on the application of any party to said arbitration. The person(s) or tribunal conducting the arbitration shall have the authority to award fees and costs, as it, in its sole descretion [sic], deems appropriate.

In addition to agreeing that any disputes arising between them would be arbitrated, the parties further explicitly agreed that "the provisions of this agreement for all purposes shall be governed by the laws of the State of California." (¶ 12 of each Agreement).

It is alleged, and it appears to be agreed, that the purpose of the agreements was to provide a vehicle through which Thompson's natural food products would be distributed to a mass merchandiser, Wal-Mart Corporation. Each of these agreements provided that they would be in effect for a period of one year, but that either party could "at any time upon thirty (30) days prior notice in writing to the other terminate this agreement for any reason whatsoever." (¶ 7 of each Agreement). This litigation arose because Thompson terminated the agreements pursuant to this clause by means of a letter of termination dated March 15, 1985. This termination letter was attached to the complaint as Exhibit C.

Plaintiffs brought this lawsuit seeking damages on the following legal theories: (1) that the agreements between the parties represent franchises under Arkansas law and that the agreements were wrongfully terminated; (2) that Thompson breached its agreement with M & M; (3) that Thompson wrongfully terminated the agreements with the plaintiffs; (4) that plaintiffs have incurred expenses under the contracts and have benefited the defendant and are enti-

tled to restitution on a *quantum meruit* theory; and (5) that Thompson tortiously interfered with plaintiffs' business relationship with Wal-Mart.

Defendant Thompson then moved that the court stay the proceedings pending arbitration. Also, apparently as a precautionary measure because it was not certain that a motion to stay was a responsive pleading within the provisions of the Federal Rules of Civil Procedure, Thompson also moved to dismiss the matter. In the portion of the motion relating to stay of the proceedings, Thompson only requested that the court "stay plaintiffs' complaint and the trial of any action thereon until arbitration has been had in accordance with the terms of the agreements pursuant to 9 U.S.C. § 3." Defendant did not ask that this court enforce the arbitration clause or in any other manner enforce the agreements between the parties.

In their brief filed in this matter, plaintiffs seemed to concede that the disputes between the parties are of the general type covered by the Federal Arbitration Act. In this respect, plaintiffs say:

> Plaintiff is willing to concede that the transactions which gave birth to this lawsuit are within Congress's power to regulate under the Commerce Clause of the United States Constitution, given the extremely broad interpretation the courts have given this clause. Therefore, were it not for the two grounds that the Plaintiffs have for revoking this provision of the contract, these issues and causes of action would be referrable to arbitration as provided by the writings evidencing a portion of the contract between the parties. It is, however, the position of the Plaintiffs that the Arkansas Wingo Act prohibits the Defendant from using an Arkansas court to enforce the arbitration clause of its contract and that the Arkansas Franchise Act renders this provision void and therefore removes it from the coverage of the Federal Arbitration Act.

## WINGO ACT

Plaintiffs assert that the defendant is prohibited from enforcing the arbitration

provisions of the contract by reason of the provisions of what is known as the Wingo Act, Ark.Stats.Ann. 64–1202. This provision of Arkansas law prohibits a foreign corporation which does business in Arkansas without properly qualifying in this state from enforcing its contracts in the courts of Arkansas. This contention has no merit for at least two reasons. In the first place, as pointed out above, defendant does not request that this court enforce its contracts. Defendant has not asked that this court order the plaintiffs to do anything. Instead, it has merely asked the court to stay the proceedings pending arbitration as is required by a federal statute, section 3 of the Federal Arbitration Act. In other words, defendant does not request that the arbitration provisions be enforced. Rather, it has simply asked the court to take the action which Congress required by passage of section 3 of the Federal Arbitration Act. That section provides that the federal courts will stay any proceeding involving disputes which the parties have agreed to arbitrate until such arbitration is had.

■ Thus, the court believes that plaintiffs' reliance upon the Wingo Act is misplaced. If the motion for stay of proceedings is granted, the court will not be ordering anyone to do anything. Instead, it will merely stay these proceedings until the disputes are arbitrated as provided for in the agreements.

■ In any event, even if the Wingo Act would generally apply to proceedings such as this one, the court is convinced that that Act would still not bar the court from staying these proceedings. The contracts in dispute clearly contemplate transactions in interstate commerce, and as indicated above, the plaintiffs appear to concede this is true in their briefs. The Arkansas Supreme Court and the federal courts of Arkansas have previously held that this act does not preclude foreign corporations not authorized to do business in this state from suing in the courts of this state on contracts made outside the state. *See Brown Broadcast, Inc. v. Pepper Sound Studios,*

*Inc.,* 242 Ark. 701, 416 S.W.2d 284 (1967), and *United Press Int'l, Inc. v. Hernreich,* 241 Ark. 36, 406 S.W.2d 317 (1966). Furthermore, the courts have also held that the Act does not prevent action in contracts relating to transactions in interstate commerce. *See Rose's Mobile Homes, Inc. v. Rex Finance Corp.,* 383 F.Supp. 937 (W.D. Ark.1974).

For the reasons stated above, the court finds that the Wingo Act does not bar the defendant from moving, pursuant to section 3 of the Federal Arbitration Act, for a stay of proceedings pending arbitration, or deter this court in any way from staying such proceedings if it appears that the Federal Arbitration Act applies.

### ARKANSAS FRANCHISE ACT

The plaintiffs next contend that the provisions of the Arkansas Franchise Act, Ark.Stats.Ann. §§ 70–808 *et seq.,* and particularly section 70–813 of such Act, "renders the arbitration clause of the contractual relationship between the parties revocable." It is not at all clear either from a reading of plaintiffs' brief or the Act the basis for such contention, even if the Act applies to the relationship between the parties. In any event, the court is convinced that the Act does not apply to the relationship created by the agreements which were attached to the complaint.

■ Ark.Stats.Ann. § 70–808 clearly and unambiguously provides that "franchise" shall mean "a written or oral agreement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trademark, service mark or related characteristic within an *exclusive territory,* or to sell or distribute goods or services, within an *exclusive territory."* (emphasis supplied). A mere reading of paragraph 1 of the agreement between Consolidated and Thompson should remove all doubt about whether that provision creates a relationship which comes within the meaning of "franchise" as defined by the Arkansas Franchise Practices Act. That provision clearly and ex-

plicitly provides that the arrangement between the parties will be that of a "non-exclusive distributor." Thus, the agreement between Consolidated and Thompson does not create a franchisor-franchisee relationship between the parties covered by the Arkansas Franchise Practices Act.

■ The court is equally convinced that the agreement between M & M and Thompson likewise does not create a relationship which is covered by the Act. The Act provides that, in order for a relationship to be considered a "franchise," the person must be granted "a license to use a trade name, trademark, service mark or related characteristic within an exclusive territory, or to sell or distribute goods or services within an exclusive territory." The agreement between M & M and Thompson clearly does not create such a relationship. Instead, it appoints M & M as a broker, and "grants to broker the exclusive right to act as broker for the solicitation of shipments of products of Thompson to retailers and distributors." It obviously does not contemplate the exclusive use of a trade name, trademark, service mark or related characteristic within the territory, nor does it provide that M & M will have the exclusive right to sell or distribute goods or services within an exclusive territory. Instead, it grants M & M only the right to solicit shipments, and does not even grant it the right to make any sales as that term is normally understood. Paragraph 4 of the agreement provides that: "All orders of products of Thompson taken by broker from buyers shall be at prices and upon terms as specified from time to time by Thompson. Broker shall forward all orders promptly to Thompson, and each order shall be subject to Thompson's acceptance." M & M was a broker authorized to solicit shipments, and nothing more. It was not given the exclusive right to sell goods within the territory, and in fact, clearly had no right to make any sales. It could solicit orders which could be either accepted or refused by Thompson. The relationship was not a franchise as that term is defined in the Arkansas Franchise Act.

Similar issues were faced by the Supreme Court of Wisconsin in *Foerster, Incorporated v. Atlas Metal Parts Company*, 105 Wis.2d 17, 313 N.W.2d 60 (1981), and the Court of Appeals for the Seventh Circuit in *Wilburn v. Cartwright*, 719 F.2d 262 (7th Cir.1983). In these cases, the courts, construing the Wisconsin Fair Dealership Law with strikingly similar provisions, held that a manufacturer's representative is not a "dealer" within the meaning of that Act because a manufacturer's representative was authorized only to solicit orders and was not granted the right to sell or distribute goods as was required in order for the Act to apply.

## OTHER CONTENTIONS OF PLAINTIFFS

Plaintiffs also contend that portions of their alleged cause of action based upon *quantum meruit* and tortious interference with business relationship do not arise out of the agreements and, thus, are not arbitrable. In addition, they contend that they are entitled to a jury trial on the question of arbitrability pursuant to the provisions of 9 U.S.C. § 4.

■ The court will consider the "easiest" contention first. Plaintiffs' reliance upon section 4 of the Federal Arbitration Act is totally misplaced. Section 4 provides that a party to an arbitration agreement may petition a federal court to enforce the provisions of the agreement. In other words, the party who desires to arbitrate pursuant to an agreement may ask a federal court with jurisdiction to order the other party to comply with the terms of the agreement and arbitrate. Section 4 then goes on to provide that, under certain circumstances, a party is entitled to a jury trial to determine whether the particular question is arbitrable. Neither party in this case has asked this court to enforce the arbitration proceedings, thus, plaintiffs' contention that they are entitled to a jury in this case is without merit.

Plaintiffs' additional arguments that an alleged cause of action for tortious inter-

ference with contracts and one based on *quantum meruit* do not arise under the contract and are not arbitrable also appear to be without merit. Courts have broadly interpreted the Federal Arbitration Act holding that it encompasses almost every conceivable dispute that arises out of the contract, including the breach of a fiduciary duty, breach of contract, tortious interference with contractual relationships, fraud in inducement, unconscionability, and unjust enrichment. *Janmort Leasing, Inc. v. Econo-Car Int'l, Inc.,* 475 F.Supp. 1282 (E.D.N.Y.1979). In any event, the court does not believe that it is necessary for it to determine those issues, since, as already indicated, neither party has asked this court to do anything other than to stay any further proceedings in this matter until arbitration is had in the time and manner agreed to by the parties.

## SUMMARY

9 U.S.C. § 3 directs that federal courts such as this one, after once determining that the parties have agreed to arbitration, "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." Courts construing the act have consistently held that arbitration clauses placed in contracts by the parties are to be liberally construed in favor of arbitration, and doubts are to be resolved so as to require it. *Lundgren v. Freeman,* 307 F.2d 104 (9th Cir.1962); *Metro Indus. Painting Corp. v. Terminal Const. Co.,* 287 F.2d 382 (2d Cir.1961), *cert. denied,* 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24. *See also Lundell v. Massey-Ferguson Services N.V.,* 277 F.Supp. 940 (N.D.Iowa 1967); *Greenwich Marine, Inc. v. S.S. Alexandra,* 225 F.Supp. 671 (D.C.N.Y.1964), *aff'd,* 339 F.2d 901 (2nd Cir.1965); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402 (2d Cir.1959), *cert. dismissed,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37. Thus, the court believes that it has no choice but to stay these proceedings irrespective of how the court might feel about whether that is the most expeditious and economical path to be followed in this case. It should be remembered that the parties

made the agreement, not the court, and the court is convinced that the plaintiffs agreed to arbitrate any disputes in Los Angeles, California, in the manner provided by paragraph 10 of the respective agreements. Once having done so, they have no right to attempt to litigate those issues in this or any other court until the arbitration process is completed, and this court has no right to allow them to do so. An order will be entered staying any further proceedings in this matter until proof is furnished to the court that the arbitration process required by the agreements between the parties is completed.

This matter will be placed in an inactive status pending the disposition of the arbitration process, without prejudice to the right of the parties to reopen the proceedings for good cause shown for the entry of any stipulation or order, or for any other purpose required to obtain a final determination of the litigation.