Roger NELMS *v.* MORGAN PORTABLE BUILDING CORPORATION

90-61                                                   808 S.W.2d 314

Supreme Court of Arkansas
Opinion delivered April 22, 1991

*Ponder & Jarboe*, by: *Dick Jarboe*, for appellant.

*Mitchell, Williams, Selig and Tucker*, by: *W. Kirby Lockhart*, for appellee.

A. GLENN VASSER, Special Justice. This is a choice of forum case in which the appellant, Roger Nelms (Nelms), sought to have his employment contract with the appellee, Morgan Portable Building Corporation (Morgan), declared void and unenforceable under the Wingo Act, Ark. Code Ann. §§ 4-27-104 and -105 (1987), and as being contrary to the public policy of the State of Arkansas. Morgan filed a motion to dismiss on the basis of ARCP Rules 12(b)(1), (b)(2), (b)(3), and (b)(6), contending that Nelms had consented to the jurisdiction of a Texas Court on all issues involving the employment contract and that an Arkansas court lacked jurisdiction to entertain such a proceeding.

Nelms was a resident of Lawrence County, Arkansas, where he served as plant manager of Morgan, a Texas corporation which manufactures and sells portable buildings in Arkansas and in other states. Nelms had been manager of the Walnut Ridge plant for two years and had formerly served as manager of Morgan's Mississippi plant. On June 13, 1986, Morgan prepared and presented to Nelms a contract entitled "Standard Employment/Non-competition Agreement". The contract was signed by Nelms and Morgan's President at Morgan's plant in College City, Arkansas. Then, the contract was delivered to Morgan's corporate office in Dallas and approved. At the time the contract was signed by Nelms and Morgan, Morgan was not authorized to do business in Arkansas, due to the revocation of its charter for non-payment of franchise taxes. The contract, which is attached to Nelm's Petition for Declaratory Judgment, recited on Page 2 as follows: "WHEREAS, Morgan would not offer the employment relationship to employ without the specifically negotiated protective covenants herein stated. . . ." The contract contained various protective covenants in Paragraph 9, which precluded Nelms from competing with Morgan by use of confidential information, trade secrets, and soliciting Morgan's customers and employees. These protective covenants would continue for five years after termination of employment, and the area covered by these covenants was within 200 miles of any of Morgan's plants. Of particular significance to this case are Paragraphs 16 and 20 of the contract, which read as follows:

16. *Choice of Law.* It is expressly agreed and stipulated that this contract shall be deemed to have been made and to be performable in Dallas, Dallas County, the State of Texas; and all questions concerning the validity, interpretation, or performance of any of its terms or provisions or of any rights or obligations of the parties hereto, shall be governed by and resolved in accordance with the laws of the State of Texas.

20. *Attorneys' Fees, Venue, and Jurisdiction.* In the event the Employee in any manner defaults or breaches the terms and conditions of this Agreement, or threatens to do same, or in the event it becomes necessary for Morgan to employ an attorney to enforce any provision of this Agreement, obtain injunctive relief, or collect damages on account of a breach or a threatened breach of this Agreement, Employee shall pay to Morgan such disbursements as Morgan may expend in such proceedings. Employee agrees that this Agreement is a contract performable wholly or partly within the State of Texas, and consents to the jurisdiction of the courts within the State of Texas in connection with any dispute or controversy arising out of this Agreement. In addition, Employee expressly waives any right he may have to be sued in the county of his residence and consents to venue in Dallas County, Texas in any proceeding arising out of this Agreement.

After reviewing these facts, the Chancellor granted Morgan's Motion to Dismiss Nelms' Petition without prejudice, and Nelms was allowed to refile "in an appropriate forum." From this adverse ruling Nelms appeals. We concur with the Chancellor's decision.

For reversal, Appellant asserts two theories for the proposition that the Lawrence County Chancery Court should exercise judicial jurisdiction over this case. Initially, he maintains that Appellee was a non-resident corporation, and unauthorized to do business at the time the contract was executed; and, therefore, the contract with its forum selection clause is unenforceable. Second, Appellant postulates that Appellee's Standard Employment/Non-competition Agreement violates public policy, thereby mak-

ing the contract with its forum selection clause invalid.

■ A consideration of both of these points must be addressed in light of the well-established rule applicable to Motions to Dismiss Under Rule 12(b) of the Arkansas Rules of Civil Procedure (ARCP). Such Motions require opposing pleadings to be read in conjunction with ARCP Rule 8(a)(2), and under this Rule the facts and allegations set forth in the Complaint are treated as true. However, conclusions of law and statements of generalities are not admitted. *Rabalaias* v. *Barnett*, 284 Ark. 527, 683 S.W. 2d 919 (1985). An application of this principle yields an admission of the terms of the Standard Employment/Non-competition Agreement executed by Appellant, an Arkansas resident, on June 13, 1986, with appellee, a Texas corporation, which was not qualified to do business in Arkansas. Under the clear admitted terms of Paragraph 16 of the Agreement, the contract is deemed to have been made and performable in Dallas County, Texas. Furthermore, it is admitted Appellant agreed that the contract was to be performed wholly or partly within the State of Texas and the Appellant consented to the jurisdiction of the Texas Court in connection with any dispute or controversy arising out of the agreement. Under this rule, Appellant admittedly waived any right to be sued in the county of his residence, and consented to Dallas County, Texas, as the proper venue for any proceeding arising out of this agreement.

■ Before this Court can resolve the Appellant's contentions that his employment contract is unenforceable under the Wingo Act, we must first determine whether an Arkansas Court should exercise jurisdiction over this case. This Court's consideration of the issue of whether an Arkansas Court should exercise judicial jurisdiction must commence with a review of the pertinent portion of Paragraph 20 of the Standard Employment/Non-competition Contract executed by Appellant and Appellee:

> 20. *Attorneys Fees, Venue, and Jurisdiction.* . . . Employee agrees that this Agreement is a contract performable wholly or partly within the State of Texas, and consents to the jurisdiction of the Courts within the State of Texas in connection with any dispute or controversy arising out of this agreement. In addition, employee expressly waives any right he may have to be sued in the

County of his residence and consents to venue in Dallas County, Texas, in any proceeding arising out of this agreement.

Such choice of forum clauses in contracts have generally been held binding, unless it can be shown that the enforcement of the forum selection clause would be unreasonable and unfair. *M/S Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1 (1972). The modern trend among Courts is to respect the enforceability of contracts containing clauses limiting judicial jurisdiction, if there is nothing unfair or unreasonable about them. See *Leflar, American Conflicts Law*, 100 (1977); *Central Contracting Co.* v. *C.E. Youngdahl & Co.*, 418 Pa. 122, 209 A. 2d 810 (1965); and see Annot., "Validity of Contractual Provision Limiting Place or Court in Which Action May Be Brought", 56 ALR 2d 300 (1957).

■ Traditionally, we have adhered to the view that an individual, such as Appellant, who subjects himself to the personal jurisdiction of a Court by express agreement shall be bound by that contract, if the agreement can be determined to be fair and reasonable. *SD Leasing, Inc.* v. *Al Spain & Assoc., Inc.*, 277 Ark. 178, 640 S.W. 2d 451 (1982). An inspection of the pleadings provides only a conclusory allegation that this is an unfair adhesion contract; however, Appellant's Petition is barren of any factual support for such a conclusion. A perusal of the undisputed terms of the agreement reveals that Appellant's employment rights, compensation and employment rules are equally balanced with Appellee's protective covenant rights and remedies; and in addition, the following language is most significant:

> . . . . WHEREAS, Employee acknowledges that he has read and is fully familiar with the terms of this Agreement, that the same was specifically negotiated, and that the productive (sic) covenants agreed upon herein are reasonable as to duration and area and consideration of the nature of Morgan's business. . . .

> . . . . I HAVE READ AND UNDERSTAND THIS AGREEMENT AND IN PARTICULAR THE NON-COMPETITION ASPECTS HEREOF, AND DO HEREBY EXECUTE THE SAME BEFORE THE

WITNESSES WHO HAVE SIGNED HEREUNDER.
. . .

Without further evidence or factual support in the record, this Court is compelled to conclude that this contract with its choice of forum provision is fair and reasonable under the circumstances.

When confronted with a similar issue in the past, we have sustained a contract which contained a forum selection clause for Arkansas. In *SC Leasing, Inc.,* v. *Al Spain & Assoc., Inc.*, 277 Ark. 178, 640 S.W. 2d 451 (1982), we concluded that a lease agreement containing a clause in which the parties expressly agreed to be subject to the jurisdiction of the Courts of the State of Arkansas should be enforced. In *SC Leasing, supra*, the lease agreement was executed by a Florida corporation and an Arkansas corporation, negotiations for the lease took place in Florida, and the equipment was located in Florida. Thus, since the choice of forum clause in the lease was fair and reasonable, this Court concluded judicial jurisdiction should be exercised by Arkansas as provided by express agreement of the parties. *SD Leasing, Inc., supra*, at 181.

Any decision whether or not to exercise judicial jurisdiction over a transaction must also address the due process requirements embodied in *International Shoe Co.* v. *Washington*, 326 U.S. 310 (1945). Under *International Shoe, supra*, and its progeny the well recognized test is whether such "minimum contacts" exist between the parties, the contract and the State of Texas so that maintenance of a suit in Texas will not offend "traditional notions of fair play and substantial justice." It has been firmly established that a single contract, such as that involved in this case, can provide the basis for the exercise of jurisdiction over a non-resident defendant, such as Appellant, by the Texas Court, if there is a substantial connection between the contract and the forum state. See *McGee* v. *International Life Insurance Co.*, 355 U.S. 220 (1957). This contract with a Texas corporation, was finally approved in Texas. The contract contains clauses reciting that the agreement is deemed to have been made and performable in Texas and governed by the laws of the State of Texas. The parties consented to and selected the jurisdiction of the Texas Court. Such factual circumstances afford sufficient "minimum contacts" to meet the standard evinced in *International Shoe*,

*supra*, and *McGee, supra.*

■ This case presents a reverse of the situation in *SD Leasing, supra.* We are confronted with a choice of forum clause in a contract between Appellant and Appellee, which confers jurisdiction on the courts of Texas rather than the courts of Arkansas. We cannot refuse to enforce such a clause, which we have concluded is fair and reasonable and which we believe meets the due process test for the exercise of judicial jurisdiction. To do otherwise would constitute a mere pretext founded solely on the forum state's preference for its own judicial system and its own substantive law. Accordingly, we conclude that the express agreement and intent of the parties in a choice of forum clause should be sustained even when the judicial jurisdiction over the agreement is conferred upon a foreign state's forum.

■ A final discussion of this first issue raised by the Appellant would be incomplete without addressing Appellant's contentions pertaining to the Wingo Act. There is no dispute that Appellee's charter was revoked for failure to pay franchise taxes at the time of execution of the Standard Employment/Non-competition Agreement. Appellee even concedes that the subsequent reinstatement of its charter did not operate retroactively to reinstate its authority to conduct business as of the date of the agreement. *Moore* v. *Rommel*, 233 Ark. 989, 350 S.W. 2d 190 (1961).

■ However, in this case, the undisputed express terms of the agreement contain non-competition clauses regulating Appellant's conduct in interstate commerce. Such a clause falls within the purview of an established interstate commerce exception to the requirement that a corporation must be qualified to do business in Arkansas before it can enforce a contract. *Goode* v. *Universal Plastics, Inc.*, 247 Ark. 442, 445 S.W. 2d 893 (1969).

■ An additional exception to the unenforceability of a contract with a corporation which is not qualified to do business in Arkansas was recognized in *Brown Broadcast, Inc.* v. *Pepper Sound Studio, Inc.*, 242 Ark. 701, 416 S.W. 2d 284 (1967). In *Brown Broadcast*, the parties admitted that Pepper, a Tennessee corporation, had not qualified to do business in Arkansas. The contract was accepted and executed in Tennessee by a Tennessee corporation, and based on those facts, this Court determined the

contract was made in Tennessee. Furthermore, this Court recognized that compliance with the Wingo Act was unnecessary when the contract was made in Tennessee. Thus, the Wingo Act will not be applied to prevent actions on contracts made outside of Arkansas, even though interstate commerce is not involved. *UPI* v. *Hernreich, d/b/a Station KZNG*, 241 Ark. 36, 406 S.W. 2d 317 (1966) and *Hough* v. *Continental Leasing Corp.*, 275 Ark. 340, 630 S.W. 2d 19 (1982). In this case, we have Appellee, a Texas corporation, which required final approval of the contract to be made in Texas, and the parties stated in Paragraph 16 of their contract: " . . . . It is expressly agreed and stipulated that this contract shall be deemed to have been made and to be performable in Dallas, Dallas County, the State of Texas. . . ." Hence, this Texas contract would not be subject to the Wingo Act, even if interstate commerce is not involved.

■ For his second point Appellant contends that the contract in question violates public policy, and, consequently, the forum selection clause is invalid. We cannot agree with this argument. A consideration of this issue presumes that this Court has deemed it appropriate for an Arkansas Court to exercise judicial jurisdiction, and, therefore the Arkansas substantive law applicable to covenants not to compete may be considered. In view of the fact that this Court has concluded that the Chancellor appropriately refused to exercise judicial jurisdiction, this contention would appear to be moot. Accordingly, Appellant should be relegated to the Texas Courts to determine whether the non-competition provisions of his employment contract constitute an unreasonable restraint of trade.

Affirmed.

HOLT, C. J. and Special Justice EDDIE H. WALKER, concur.

HAYS, GLAZE, CORBIN, AND BROWN, JJ., not participating.

JACK HOLT, JR., Chief Justice, concurring. I concur with the results reached in the plurality opinion; however, it is inscribed with such broad, sweeping statements, that I feel compelled to write in a narrow vein. In doing so, I adopt the plurality's version of the facts, reorganize the issues as written, and restrict my views as follows:

## WINGO ACT

Nelms initially asserts that his employment agreement with Morgan is void and unenforceable because it violates the Wingo Act. There is no dispute that Morgan's charter was revoked for failure to pay franchise taxes at the time of execution of the employment agreement. However, the undisputed, express terms of the agreement contain a non-competition clause regulating Nelms's conduct in interstate commerce. Such a clause falls within the purview of an established interstate commerce exception to the requirement that a corporation must be qualified to do business in Arkansas before it can enforce a contract. *Goode* v. *Universal Plastics, Inc.*, 247 Ark. 442, 445 S.W.2d 893 (1969). We have also noted that the Wingo Act will not be applied to prevent actions on contracts made outside of Arkansas, even though interstate commerce is not involved. *UPI* v. *Hernreich, d/b/a Station KZNG*, 241 Ark. 36, 406 S.W.2d 317 (1966); *Hough* v. *Continental Leasing Corp.*, 275 Ark. 340, 630 S.W.2d 19 (1982).

## PUBLIC POLICY

Nelms also argues that the employment agreement is void and unenforceable because it violates the public policy of the State of Arkansas.

We have adhered to the view that an individual who subjects himself to the personal jurisdiction of a court by express agreement shall be bound by that contract if the agreement can be determined to be fair and reasonable. *SD Leasing, Inc.* v. *Al Spain & Assoc., Inc.*, 277 Ark. 178, 640 S.W.2d 451 (1982); *see* Ark. Code Ann. § 4-1-105 (1987); and *see also* R.A. Leflar, *American Conflicts Law* 100 (1977).

In this case, the pleadings provide only a conclusory allegation that this is an unfair adhesion contract, as Nelms's petition is barren of any factual support for such a conclusion. An examination of the undisputed terms of the agreement reveals that Nelms's employment rights, compensation, and employment rules are equally balanced with Morgan's protective covenant rights and remedies. Without further evidence or factual support in the record to show otherwise, we are compelled to conclude that this contract is fair and reasonable under the circumstances.

SUBSTANTIAL RELATIONSHIP

The enforceability of a choice of forum clause also hinges on whether the state that the parties have chosen to govern the contract has a "substantial relationship" with the contract. *Cooper* v. *Cherokee Village Dev. Co., Inc.*, 236 Ark. 37, 364 S.W.2d 158 (1963); *Arkansas Appliance Distrib. Co.* v. *Tandy Electronics, Inc.*, 292 Ark. 482, 730 S.W.2d 899 (1987). Here, Morgan is a Texas corporation that accepted an employment contract in Texas for one of its employees to manage a plant dealing in interstate commerce. The contract itself indicates that it was made and was performable in Texas and that Texas was selected as the proper forum in the event of a dispute. These factors establish a substantial relationship between the State of Texas and the employment agreement.

Special Justice EDDIE H. WALKER, JR. joins in this concurring opinion.