SIMMONS-BURKS CLOTHING COMPANY *v.* LINTON.

Opinion delivered March 29, 1909.

FOREIGN CORPORATIONS—DOING BUSINESS IN STATE.—Acts 1901, c. 216, prohibiting foreign corporations from doing business in this State without complying with its terms, does not prohibit such corporations from taking a note or mortgage to secure a debt past-due for goods sold in another State.

Appeal from Marion Chancery Court; *T. H. Humphreys,* Chancellor; reversed.

*Woods Brothers,* for appellants.

The act does not apply in this case. In construing it the court will consider the whole act, including the title, and will, if possible, give effect to every part and clause thereof. If any part appears obscure, it may be aided by another. Endlich on Interpretation of Statutes, § § 258-264-266; 23 Am. & Eng. Enc. of L. 306-11; 27 Ark. 419; 3 Ark. 285; 37 Ark. 491; 82 Ark. 302; 77 Ill. 610; 11 Ark. 44; 32 Ark. 463. See also 24 Ark. 155; 25 Ark. 101; 5 Ark. 536. The act only applies to foreign corporations *doing business* within the State. 57 Ark. 24. The purpose and intent of the act is that no foreign corporation shall begin any business in the State, with the purpose of carrying it on, until it has complied with the requirements of the act, and a single act of business, such as here presented, would not constitute doing business within the meaning of the act. 60 Ark. 120; 63 Ark. 268; 70 Ark. 525; 2 L. R .A. (N. S.) 127; 10 *Id.* 693; 113 U. S. 727; 9 L. R. A. 601; 24 *Id.* 289; 44 Wis. 387; 83 Fed. 403; 154 Ill. 177; 71 Ala. 60; 122 Pa. 48; 92 Ala. 145; 176 Mo. 200; 19 Cyc. 1268-9.

*Seawel, Jones & Seawel,* for appellees.

In construing statutes, the Legislature must be understood to mean what it plainly says, and this excludes interpretation. 65 Ark. 521, 532. Section 1 of the act cannot be misunderstood, but plainly is intended to prevent foreign corporations from doing or establishing a business in this State, making any contracts, or suing upon any contracts in this State, until they have complied with the act. The second section of the act is broader than the second section of the act of 1887, contains no words of qualification or limitation, and has no reference to the first section, except as to the manner these corporations shall qualify themselves to do the things mentioned in the second. It was intended to cure the omission in the act of 1887, calling out the decision in *Florsheim Bros. D. G. Co.* v. *Lester,* 60 Ark. 121, to the effect that taking a note and mortgage in this State by a foreign corporation was not doing business, that this last act was passed. The language is plain, and can only be taken to mean what it says. 70 Ark. 549; 72 Ark. 195; 65 Ark. 559; 69 Ark. 521; 77 Ark. 203.

2.  The creation of the debts for which the notes and deed of trust were executed was not interstate business nor was the taking of the notes and deed of trust a part of the original contract, but these transactions were independent thereof and constituted a new contract.  36 Ark. 571; 204 U. S. 152; 51 L. Ed. 415.

WOOD, J.  This was a suit by appellants against appellees on certain notes and to foreclose a mortgage.  The Simmons-Burks Clothing Company and the DuPont Company are foreign corporations, engaged in the mercantile business in the State of Missouri and doing an interstate business.  The debts for which they sued were contracted for goods and merchandise sold by appellants and delivered to the appellees, I. N. Linton & Company *et al.* in the State of Missouri.  The notes and deed of trust were executed in the State of Arkansas to secure past-due debts for said goods and merchandise.  Appellants have never filed their articles of incorporation in this State nor done any business here except interstate commercial business. So the only question presented is the construction of the act of 1901.  The title is:  "An act to regulate the business of foreign corporations other than railways," etc.  The act is as follows:

"Sec. 1.  Every corporation formed in any other State, Territory, country or county, before it shall be authorized or permitted to establish a business in this State, or to continue business therein, if already established, shall by its certificate under the hand of the president and seal of such company or corporation, file in the office of the Secretary of this State a copy of its articles of incorporation, if not already filed therein, and also with the clerk of the county in which it has opened an office for the purpose of transacting business, and in addition thereto shall file with the Secretary of State and the clerk of the county in which it has opened an office, or commenced business, within six (6) months after the establishment of such office or beginning of such business, a statement showing the proportional part of its capital stock which it has in use in the operation of its business, both in the State and in the county in which it is doing business.

"Sec. 2. That no corporation formed or organized in another State, Territory, country or county, shall be authorized or entitled to make any contract in this State until it has complied with the provisions of the foregoing section, nor shall it be authorized to sue on any contract made in this State until the provisions of section one (1) of this act are complied with; provided, that corporations now doing business in this State may have sixty (60) days to comply with this act.

"Sec. 3. That this act shall not apply to railway, express, telegraph, palace car and insurance corporations, and shall take effect and be in force from and after its passage." (Acts 1901, c. 216.)

The acts of April 14, 1887, of February 16, 1899, and as amended May 8, 1899, and of May 23, 1901, are upon the same subject and for the same purpose. They relate to the subject-matter, of "prescribing conditions upon which foreign corporations may *do business* in this State." To "do business in this State," in the meaning of these statutes, "implies corporate continuity of conduct in that respect, such as might be evinced by the investment of capital here, with the maintenance of an office for the transaction of its business, and those incidental circumstances which attest the corporate intent to avail itself of the privilege to carry on a business." *Penn Collieries Co.* v. *McKeever*, 2 L. R. A. (N. S.) 127 (New York Court of Appeals). Conducting litigation, taking a note and mortgage to evidence and secure a debt past due for goods sold by a foreign corporation in another State—these and such like isolated and single acts not connected with any established business in the State, as above defined, do not constitute the "doing business in the State" within the purview of our law. *Railway Company* v. *Fire Association*, 55 Ark. 163; *Florsheim Bros. Dry Goods Co.* v. *Lester*, 60 Ark. 120; *Sunny South Lumber Co.* v. *Neimeyer Lumber Co.*, 63 Ark. 268; *Buffalo Zinc & Copper Co.* v. *Crump*, 70 Ark. 525. The act under consideration, which repealed former acts upon the subject (*Western Union Tel. Co.* v. *State*, 82 Ark. 302), did not change the meaning of the term, "do business in this State," as used in former acts. On the contrary, the lawmakers used language which showed that it intended to adopt the construction which this court had given

the words to "do business in this State." For instance, take the words: *"to establish a business in this State or to continue business* therein if already established," and the words: "it has opened an office for the purpose of transacting business," and "after the establishment of such office." These words show that the Legislature had in mind a business that was "established" and "continuing" in this State, rather than mere single, isolated and transitory acts done here either in connection with, or apart from, some business that has its domicil in another State. As to what constitutes "carrying on" or doing business under similar statutes, see *A. Booth & Co.* v. *Weigand,* 10 L. R. A. (N. S.) 693; *Cooper Mfg. Co.* v. *Ferguson,* 113 U. S. 727; 19 Cyc. pp. 1268-9, and other authorities cited in appellant's brief.

The act must be considered as a whole. The second section was but a part of an act the purpose of which, as expressed in its title, was to "regulate the *business* of foreign corporations." The *business* to be regulated was business of a continuous nature, established, and to be "carried on" in an office or permanent place for "transacting business." The term *"business,"* as thus explained, is the dominant idea and the larger expression throughout the act, and the particular word "contract" must be so construed as to harmonize with the broader expressions, in order to make the act, if possible, a consistent whole and to give effect to the intent of the Legislature in its enactment. 26 Am. & Eng. Enc. Law (2d Ed.) p. 610; *State* v. *Jennings,* 27 Ark. 419; *Haglin* v. *Rogers,* 37 Ark. 491; 23 Am. & Eng. Enc. Law (1st Ed.) 310.

Now, the word "contract," as used in the second section, has no other or different meaning than the same word where it occurs in the acts of 1887 and 1899, *supra,* and there is no more reason why recovery on the contract evidenced by the notes and mortgage in the instant case should be denied than there was in the cases of *Florsheim Bros. Dry Goods Co.* v. *Lester* and *Sunny South Lumber Co.* v. *Neimeyer Lumber Co., supra.* The contracts were enforced in those cases, and the doctrine in those cases rules here. The taking of the notes and mortgage was a transaction or "doing of business"; it was also the "making" of a "contract." If our interpretation of the act be cor-

rect, the word "contract" in the second section means any contract pertaining to business of the character expressed in the first section as we have construed it above. In the case of *Wolfort v. Dixie Cotton Oil Co.,* 77 Ark. 203, the question was whether a foreign corporation actually engaged in business in this State, *.i. e.,* business of an established and continuous nature as above indicated—intrastate business—could recover upon a contract made with it without complying with the provisions of the statute before attempting to do such business in the State. We held in that case that such contracts were not void, and that recovery could be had if there had been compliance with the statute after the contract was made, although there had been no compliance before the business was established. It thus appears that the question here was not considered in the case last mentioned, and nothing is said therein that tends even to support appellee's contention. The judgment is therefore reversed, and the cause is remanded with directions to sustain the demurrer, and for further proceedings not inconsistent with this opinion.