UNION PLANTERS NATIONAL BANK OF MEMPHIS, TENNESSEE *v.* CLEM MOORE & PAUL WILLMUTH, PARTNERS D/B/A GENERAL OIL & INVESTMENT COMPANY

5-5499                                           464 S. W. 2d 786

Opinion delivered March 29, 1971

*Bennett & Purtle,* for appellant.

*Highsmith, Harkey & Walmsley,* for appellees.

CARLETON HARRIS, Chief Justice. This appeal questions the correctness of the ruling by the Independence County Circuit Court that Auto-Kar Distributors, Inc. was doing business in Arkansas without having qualified, and that accordingly, its note and security instrument assigned to Union Planters National Bank of Memphis, appellant herein, could not be sued upon. N. S. Garrott, Jr. owned two corporations, the Garrott Corporation, and Auto-Kar Distributors, Inc. The former is an Arkansas Corporation and sold coin operated automatic car washers. The latter corporation was set up to market these coin operated car washers in Tennessee, Southern Kentucky and Northern Mississippi. Both companies sell a machine known as "Auto-Kar Washer". A contract was entered into in January, 1967, between Auto-Kar Distributors, Inc. and Clem Moore and Paul Willmuth, partners, D/B/A General Oil & Investment Company, for the sale of one of these car washers. This contract was subsequently assigned to appellant, which instituted suit when appellees ceased making their payments. Appellees defended upon the basis that Auto-Kar Distributors, though doing business in Arkansas, had not qualified to do so; that appellant was not authorized to do business in Arkansas, and it was prayed that the complaint be dismissed. After the taking of testimony, the court found that Auto-Kar Distributors, Inc. contracted to sell a car washer to appellees, which was to be erected at Batesville; that it further contracted to supervise the erection of the car washer through its engineer; that Auto-Kar Distributors, Inc. was a foreign corporation incorporated under the laws of the state of Tennessee and had not qualified to do business in Arkansas; still further, that the contract between the parties was first signed by the president of Auto-Kar Distributors, Inc. and then taken by its representative to appellees in Batesville where it was signed by a repre-

sentative of appellees; that the contract for the sale and erection of the automatic car washer was made in the state of Arkansas. Upon these findings, the complaint was dismissed, and from the judgment so entered, appellant brings this appeal. For reversal, it is asserted that the court erred in holding that Auto-Kar Distributors was doing business in Arkansas, appellant contending that the transaction was a single isolated sale which would not constitute doing business in this state, and it is further contended that the transaction was interstate in character and qualification to do business was not required of Auto-Kar Distributors.

Mr. Garrott, who lives in Memphis, testified that he became acquainted with appellees during a period of time when one of the Garrott Corporation salesmen sold units in Arkansas. He said that this corporation entered into a contract with appellees to sell them a complete car wash system, but that the sale was made on condition that it could be financed through the home company in Dallas. However, the parties were unsuccessful in obtaining financing in Dallas, and Garrott testified that it was decided that financing could probably be obtained through the Union Planters National Bank in Memphis through Auto-Kar Distributors. This last is the Tennessee corporation. The witness stated his company did banking business with this bank and the proposed transaction was discussed with bank officials; as a consequence, the bank agreed to handle the financing. Accordingly the first contract was cancelled and a new bill of sale was executed on January 16, 1967. Appellant bank has a required set of forms for use and this form, called "Security Agreement" was executed by Mr. Garrott as president of Auto-Kar Distributers and by Clem Moore for General Oil & Investment Company, the agreement being dated January 23, 1967. It actually is a contract for the sale of the washer, and was assigned by Auto-Kar Distributors to Union Planters National Bank on the same date. Under the provisions of the agreement, the seller retains security title to the goods. At this point, we have the first dispute in the testimony. Garrott testified that Moore had already signed the agreement at the time he (Garrott) signed it

in Memphis. Moore subsequently testified that Garrott had already signed it at the time he (Moore) signed it in Batesville. The president of Auto-Kar Distributors further testified, and this is not disputed, that the machine was shipped from Dallas, Texas, F. O. B. to Moore and Willmuth. Garrott testified that this was the only unit that Auto-Kar Distributors had sold in Arkansas. He also testified that there was nothing in the agreement that required his company to furnish any assistance in setting up the unit, but that when the machine was delivered at Batesville, the company sent a man over to supervise the installation of the machinery.

Mr. Willmuth and Mr. Moore testified that the agreement was signed by Moore in their office at Batesville, and that Garrott's signature was already affixed to the instrument when Moore signed it. Both stated that the agreement was brought to the General Oil & Investment Company's office by a Mr. Ross who was with Auto-Kar Distributors.[1] Moore (Clem) stated that the items comprising the car wash were shipped or brought into Arkansas, part coming from Dallas, another part, a hot water heater, coming from another source which he believed to be Tennessee. He testified that appellees also purchased a vacuum cleaner to use in cleaning the inside of the cars which was to be delivered at a date subsequent to the original delivery; this vacuum cleaner was delivered in Batesville by an employee of Auto-Kar. Moore also said that he paid $175.00 for the use of the engineer sent over by Auto-Kar for the purpose of supervising the erection of the unit.

Mr. Garrott again testified on rebuttal that the agreement was not signed when it was sent out by him. "It would have been the poorest business practice in any form ever conducted had I signed that before it was sent over there." He also denied that there was any vacuum cleaner involved in the transaction at all. Garrott said he had not agreed to furnish any engineer, and that he was denying he had said anything about sending an engineer. The bill of sale does provide for "supervision" for $175.00.

[1]Garrott had testified that the details of the transaction had been handled by Sam Moore and Carl Ross.

After a close study of the facts in this case, and the authorities cited, we agree with the trial court that the acts of Auto-Kar Distributors, Inc. constituted the doing of business in this state. Cases cited by appellant are distinguishable. *McHaney* v. *Lafayette South Side Bank and Trust Co.*, 185 Ark. 1022, 50 S. W. 2d 991, involved a foreign corporation, not authorized to do business in Arkansas which had executed a contract renewing a prior guaranty contract *entered into and to be performed in another state. Sillin* v. *Hessig-Ellis Drug Co.*, 181 Ark. 386, 26 S. W. 2d 122, held that a foreign corporation, without qualifying to do business in Arkansas, may take and foreclose a mortgage to collect its accounts *resulting from interstate sales.* In *Simmons-Burks Clothing Co.* v. *Linton*, 90 Ark. 73, 117 S. W. 775, the court held that prohibiting a foreign corporation from doing business in this state without qualifying to do so, does not prevent such a corporation from taking a note or mortgage to secure a past due debt *for goods sold in another state.* The case of *Goode* v. *Universal Plastics, Inc.*, 247 Ark. 442, 445 S. W. 2d 893, relied on by appellant, also involved a contract made in another state.

The facts in the case of *Hogan* v. *Intertype Corporation*, 136 Ark. 52, 206 S. W. 58, bear some similarity to the instant litigation. There, a salesman for appellee company, which had its main office in New York, called on the appellant in Arkansas and obtained a written contract for a typesetting machine. The machine was shipped from New Orleans to the appellant, and thereafter an agent of the company arrived in Arkansas and demonstrated to appellant the operation of the machine, whereupon appellant executed notes and mortgage. The chancellor ruled the transaction interstate business rather than business done in this state by a foreign corporation contrary to law. On appeal, we said:

"In the instant case, the property was not only retained by the seller after it reached Arkansas, but an agent of the seller was sent to the State for the purpose of demonstrating that the machine would do the work represented, in order to consummate the sale; and, after

making a satisfactory demonstration, the agent accepted in part payment therefor long time notes executed and payable at Huntington, Arkansas, and a mortgage on the machine to secure the notes, which was recorded in Greenwood, Arkansas. This constituted a business transaction in Arkansas by a foreign corporation contrary to the statute law."

This court reversed the decree and dismissed the case.

In the case now before us, title to the property was also retained by the seller after it reached Arkansas; there is substantial evidence that an agent, or employee, of the seller was sent to Batesville for the purpose of seeing that the car wash was properly constructed. There was substantial evidence that the contract was executed, and became effective, at Batesville. These facts are all in line with *Hogan*. In addition, there was also substantial evidence that a vacuum cleaner, necessary in the operation of the car wash, was brought to Batesville by an employee of Auto-Kar. We think these facts establish that Auto-Kar was doing business in Arkansas contrary to the statute.

Nor are we impressed by the argument that this was an interstate transaction. *Hogan* v. *Intertype Corporation supra*, points out that one test laid down by Arkansas cases differentiating an interstate transaction from an intrastate transaction is the ownership of the property after it arrives in this state. It has already been pointed out that title was retained by Auto-Kar. Actually, all of the facts heretofore mentioned support the view that this is an intrastate transaction. Let it be remembered that this is not the case of a resident of this state ordering goods from a foreign corporation, and the foreign corporation honoring that order by shipping the goods to the purchaser. To the contrary, the essential acts necessary to putting the car wash into operation were carried out in this state, *viz*, the contract was entered into in this state, the car wash was constructed in this state, and supervision for construction was furnished at the site.

Little need be said about the fact that the provisions of Ark. Stat. Ann. §§ 64-1201-02 (Repl. 1966) are also applicable to the assignees of such an unenforceable contract. In *Pacific National Bank* v. *Hernreich,* 240 Ark. 114, 398 S. W. 2d 221, this court flatly held that there can be no holder in due course of a negotiable instrument arising out of a transaction which was illegal because an unlicensed foreign corporation was without power to enter into an enforceable contract in Arkansas. In so holding, we said:

"It is settled law that assignees can receive no better rights than their assignors had. The strong language in the *Hogan* case is excellent—but it is dicta. Thus it is apparent that this is really the first time this court has had occasion to rule directly on the question presented.

To reverse this case and permit enforcement of the notes here sued on would in effect repeal our penal statute prohibiting unlicensed foreign corporations from doing business in this state."

We held that a transaction of this nature is not merely unenforceable but void *ab initio.*

Affirmed

FOGLEMAN, J., not participating.