LEENERTS FARMS, INC. *v.* CRANCO,
A Joint Venture of Andco
Farms, Inc., A California Corporation, and
Crescent Farms Company, A Texas Corporation

78-200                                    578 S.W. 2d 229

Opinion delivered March 26, 1979
(In Banc)

*Wright, Lindsey & Jennings,* by: *William D. Haught* and *John R. Tisdale,* for appellant.

*Gaughan, Barnes, Roberts, Harrell & Laney,* by: *Allen P. Roberts,* for appellees.

CONLEY BYRD, Justice. Leenerts Farms, Inc., an Illinois Corporation, brought this action against Cranco, a joint venture of Andco Farms, Inc., a California Corporation, and Crescent Farms Company, a Texas Corporation, to specifically enforce an alleged contract for the purchase of 3548 acres of land owned by Cranco. The trial court found that appellant Leenerts Farms, Inc. was a foreign corporation not qualified to do business in Arkansas, that the contract sued upon was made in Arkansas and that it arose in the course of and was part and parcel of appellant's doing business in the State contrary to the provisions of the "Wingo" Act, Ark. Stat. Ann. § 64-1201 and § 64-1202. Based upon those findings the trial court dismissed the complaint on the basis that the contract was void. For reversal appellant contends (1) that it was not doing business within the State of Arkansas for purposes of the "Wingo" Act and (2) that the contract of sale was not an Arkansas contract.

The record shows that appellant is a family owned corporation engaged exclusively in farming. Appellant was first contacted by one James Jacks of Monroe, Louisiana, about the possibility of acquiring the farm. On the first visit to Arkansas to view the farm, appellant agreed to pay Jacks a finder's fee in the event the farm was purchased. Sometime around the first of December, 1977, appellees through their agent Jack DeWitt made arrangements with Julian Streett, an attorney in Camden, to handle the negotiations for the sale of

the farm. Streett was not told the identity of the prospective purchasers. After appellant had viewed the farm, its principal officers contacted Tom Henderson, an attorney of McCombs, Illinois, to handle the negotiations for the purchase of the farm. Julian Streett's first knowledge of appellant as a prospective purchaser of the farm came through a telephone call from Tom Henderson. Henderson submitted on December 27, 1977, to Julian Streett a proposal to purchase the farm. Appellant attached its check in the amount of $50,-000 to the proposal for which Streett was to act as escrow agent. After a conference with Jack DeWitt in Streett's office, appellees through Streett submitted a counter proposal to appellant. Tom Henderson from his office in Illinois then contacted Streett by phone. After Streett informed Henderson that he had no authority to make any changes in appellees' counter proposal, all negotiations for the purchase of the farm were carried out between appellant's agents in Illinois and appellee's agent Jack DeWitt in Davis, California. As a result of those negotiations, Tom Henderson prepared appellants' counter proposal and mailed the original to appellees' agent Jack DeWitt in California with a copy to Julian Streett in Camden. On February 1, 1978, Jack DeWitt, while en route to Arkansas, called appellant from Denver, Colorado. There is a dispute between Jack DeWitt and Roger Leenerts as to what was said in that conversation,[1] but the trial court, for purpose of making its ruling on appellees' defense under the Wingo Act, accepted Mr. Roger Leenerts' version — *i.e.* that the contracts were signed and appellant had bought the farm.

Following the telephone call from Jack DeWitt, appellant's managing officers flew by private plane to Arkansas with some Illinois bankers, through whom they intended to make a loan to finance the purchase of the farm. Appellant also made some arrangements with James Jacks to do some surface water drainage of the lands.

Tom Henderson contacted Julian Streett on February 3, 1978, but was unable to verify that the contract had been executed. Following a conversation between Roger Leenerts and Jack DeWitt on February 7, 1978, in which DeWitt told

---

[1]Jack DeWitt contended there was a counter proposal to the counter proposal.

Leenerts that the farm had been sold to another purchaser Tom Henderson again contacted Streett who verified DeWitt's conversation with Roger Leenerts. When appellant's counter proposal was returned to appellant, the signatures of appellees' officers Mr. Anderson, a Mr. Buretta and a third person that Jack DeWitt could not identify had been cut out.

Appellant's counter proposal, which they allege was the executed contract, in so far as here pertinent provides:

## "OFFER TO PURCHASE REAL ESTATE

THIS OFFER, made this 25 day of January, 1978, by and between LEENERTS FARMS, INCORPORATED, of Golden, Illinois, (hereinafter referred to as Buyers) and ANDCO FARMS, of Davis, California, and CRESCENT FARMS, of Houston Texas, (hereinafter referred to as Sellers).

### WITNESSETH:

(1) The Buyers hereby offer and agree to pay the Sellers for approximately Three Thousand Five Hundred Forty-eight (3,548) acres the sum of One Million Six Hundred Twenty-nine Thousand Three Hundred Twenty Dollars ($1,629,320.00) in the following manner:

(b) At such time as this is accepted by all parties, the Fifty Thousand Dollars ($50,000.00) which has been placed in escrow shall be delivered to the Sellers and shall be applied toward the total amount at closing.

(6) If the title to said real property be merchantable in fact as called, the Sellers shall deliver for the Buyer at the office of said Seller's agent a general Warranty Deed which shall provide that the conveyance is subject to all prior reservations or conveyances of any part of the mineral estate, and such general Warranty Deed shall be free and clear from all liens and encumbrances whatsoever, except as herein provided, and the Buyer shall

then and there pay the balance of said cash payment at closing.

(9) In furtherance of this agreement, the Seller has deposited with Julian Streett, of Camden, Arkansas, Attorney for Seller, a copy of this Offer to be held in escrow and is authorized to accept for and on behalf of the Sellers the payment of Fifty Thousand Dollars ($50,000.00.). The Sellers and Buyers agree to pay one-half (½) of the escrow fees.

(13) The possession of said real estate is to be delivered to Buyers immediately upon execution of this agreement so that Buyer may start farming operations and prepare for the crop year 1978. Buyers and Sellers agree that if farming operations are not started, the Sellers may upon ten (10) days written notice to the Buyers, commence farming operations in order to take all steps reasonably necessary to prepare the property covered by this Offer for the 1978 crop year. The Sellers agree to include in such notice the anticipated operations on a periodic basis with the charge to the Buyers to be Five Dollars ($5.00) per acre per tractor trip plus the actual cost of fuel, herbicide, lime, fertilizer or seed. The Sellers agree to estimate to the Buyers expenditures which they anticipate making on a weekly basis but both parties acknowledge that such figures will be only an estimate and the Buyers agree and acknowledge that they will be responsible for all such charges reasonably necessary to prepare said lands for the 1978 crop.

(14) This agreement shall extend to and be binding upon the parties hereby and their respective heirs, executors, or administrators. The Buyers agree that their interest in the property, which arises under this agreement shall not be assignable to any other party without prior written consent of the Sellers.

(15) Sellers and Buyers, and each of them, are expressly granted the right to specific performance herein. It is specifically understood and agreed between the

Sellers and the Buyers that the Fifty Thousand Dollars ($50,000.00) put up by the Buyers in this matter is not in any sense of the word to be called 'earnest money.'

IN WITNESS WHEREOF, the parties hereto have signed this Agreement this 31 day of January, 1978."

In *Alexander Film Company* v. *State, use of Phillips County,* 201 Ark. 1052, 147 S.W. 2d 1011 (1941), we pointed out that the Wingo Act, Ark. Stat. Ann. §§ 64-1201 and 64-1202 (Repl. 1966) is a penal statute which must be strictly construed in favor of those against whom the penalty is to be imposed. Furthermore, in construing a contract to determine whether it is valid or invalid, we find in 17 Am. Jur. 2d Contracts § 254 the following:

"It is a general principle that where a contract is fairly open to two constructions, by one of which it would be lawful and the other unlawful, the former will be adopted. Thus, if a contract is capable of a construction which will make it valid, legal, effective, and enforceable, it will be given that construction if the contract is ambiguous or uncertain. A construction which renders the contract valid is preferred to one which renders it invalid, and it will not be construed so as to the invalid unless that construction is required by terms of the agreement in the light of the surrounding circumstances."

When the record in this case is considered in the light of the penal nature of the Wingo Act and the principle that a contract should be construed where possible to make it valid, we must hold that the trial court erred in ruling that the contract sued upon was an Arkansas contract within the provision of Ark. Stat. Ann. §§ 64-1201 and 64-1202 (Repl. 1966). The fact that the contract for purchase of the real estate was to be closed in Arkansas would not make a contract entered into out of the State of Arkansas invalid under Ark. Stat. Ann. § 64-2102 (Repl. 1966).

Since this disposition makes it unnecessary to determine whether appellant was doing business in Arkansas in viola-

tion of Ark. Stat. Ann. § 64-1201, we have avoided any ruling thereon. However, we point out that upon litigation arising after the effective date of this opinion we will reconsider *Republic Power & Service Co.* v. *Gus Blass Co.*, 165 Ark. 163, 263 S.W. 785 (1924), in so far as it supports appellees' contention that any acquisition of property in ths State by a nonresident corporation is a violation of Ark. Stat. Ann. § 64-1201 (Repl. 1966).

Reversed and remanded.

FOGLEMAN, J., dissents in part.

JOHN A. FOGLEMAN, Justice, concurring in part, dissenting in part. I join in all of the majority opinion except the gratuitous offer to judicially amend the Wingo Act, 55 years after the decision in *Republic Power & Service Co.* v. *Gus Blass Company,* 165 Ark. 163, 263 S.W. 785.