## NORTH AMERICAN PHILLIPS COMMERCIAL ELECTRONICS CORPORATION v. GAYTRI CORPORATION, d/b/a PINE TREE MOTEL

86-88 722 S.W.2d 270

Supreme Court of Arkansas
Opinion delivered January 12, 1987
[Rehearing denied February 9, 1987.*]

---

*Hickman and Hays, JJ., would grant. Glaze, J., not participating.

*Jay E. Hoggard*, for appellant.

*Guthrie, Burbank, Dodson & McDonald*, by: *David F. Guthrie*, for appellee.

JOHN I. PURTLE, Justice. The appellant sued for money allegedly due on a leasing contract between the appellant's predecessor in title and the appellee. The trial court dismissed the complaint finding that the appellant, a foreign corporation, was "doing business" in Arkansas at the time the contract was made without having first qualified to do business in the state as required by the Wingo Act, particularly Ark. Stat. Ann. § 64-1202 (Repl. 1980). That section prohibits a non-qualifying foreign corporation from enforcing a contract made in this state. The test to determine whether the threshold requirements for application of the penalty provisions of the Wingo Act have been met consists of two parts. First, it must be demonstrated that the contract was made by a non-qualifying foreign corporation which was "doing business" in the state; and second, it must be shown that the particular contract in question was made in Arkansas. Further, if it is raised as a defense, to the contention that the act applies, we must consider whether the Commerce Clause of the United States Constitution precludes the application of the sanctions of § 64-1202. Although the appellant has stated two points for reversal, it makes only one argument. The first point stated is simply that the Wingo Act does not apply to this transaction. Although the appellant discusses the terms of the contract providing that it would become effective only upon acceptance in Illinois, the conclusion stated is that it was therefore a contract in interstate commerce. That is also the burden of the appellant's second stated point. No argument whatever has been made that the appellant was not "doing business" in Arkansas or the contract was not "made" here except to sustain the appellant's contention that the transaction is protected by the Interstate Commerce Clause. Since we find the appellant did not demonstrate that this transaction fell within the protection of the Commerce Clause, we affirm.

Sometime in late 1980 the appellee made a telephone call to Sylvania's office in Dallas, Texas, inquiring about the possibility of buying or leasing television sets for the Pine Tree Motel, which is owned by appellee. As a result of the telephone call, a representative from Sylvania came to El Dorado, Arkansas, to explore the matter further. The visit by Sylvania culminated in an agreement on December 11, 1980, whereby the appellee leased 20 television sets and made the first payment of $338.57. Sylvania also purchased from the appellee the television sets being replaced. Soon after delivery of the new sets they proved defective, and repairs were made by local repair shops and by representatives of Sylvania who worked out of Texas. Title to the new television sets was to be retained by Sylvania until the full agreed price was paid.

Sylvania, an Illinois corporation, sold the contract to the appellant, a Delaware corporation, and the payments on the contract were mailed thereafter to Hundred East Credit Corporation, New York, New York. The contract's express terms stated it would not become effective until it was signed by Sylvania in Schiller Park, Illinois, and that the contract would be governed and construed according to the laws of the State of New York.

In claiming that this transaction was entitled to protection as interstate commerce under the Commerce Clause, and thus not subject to state regulation, the appellant presented no witness to describe the nature of its business dealings in Arkansas. Its counsel merely cross examined the appellee's witness with respect to the nature of the transaction.

Our previous decisions interpreting § 64-1201 have concentrated on whether the particular transaction at hand was to be regarded as "intrastate" or "interstate." In *Union Planters National Bank of Tennessee* v. *Moore*, 250 Ark. 272, 464 S.W.2d 786 (1971), we reviewed the question whether the appellant, contractual successor to another Tennessee corporation called Auto-Kar, could enforce a contract of sale of automatic car washing equipment to the appellee, an Arkansas citizen. Auto-Kar had not registered to do business in Arkansas. Chief Justice Harris said:

Nor are we impressed by the argument that this was an

interstate transaction. *Hogan* v. *Intertype Corporation*, [136 Ark. 52, 206 S.W. 58] points out that one test laid down by Arkansas cases differentiating an interstate transaction from an intrastate transaction is the ownership of the property after it arrives in this state. It has already been pointed out that title was retained by Auto-Kar. Actually, all of the facts heretofore mentioned support the view that this is an intrastate transaction. Let it be remembered that this is not the case of a resident of this state ordering goods from a foreign corporation, and the foreign corporation honoring that order by shipping the goods to the purchaser. To the contrary, the essential acts necessary to putting the car wash into operation were carried out in this state, *viz*, the contract was entered into in this state, and supervision for construction was furnished at the site. [250 Ark. at 277, 464 S.W.2d at 789]

Although our opinion in *Union Planters* did not cite the Commerce Clause as the basis of it, we recognized an interstate commerce exception to the application of the statute. We are therefore left with the pure federal law question whether and under what circumstances companies engaged in interstate commerce are protected by the Commerce Clause, United States Constitution, art. 1, § 8, cl. 3.

The opinion of Judge Overton in *Uncle Ben's Inc.* v. *Cromwell*, 482 F.Supp 1149 (E.D. Ark. 1980), explains that in some instances companies regularly, and continuing to be, engaged in interstate commerce may so "localize" their businesses that they may properly be subject to state regulation, citing generally, *Union Brokerage Co.* v. *Jensen*, 322 U.S. 202 (1944), and *Eli Lilly & Co.* v. *Sav-On-Drugs*, 366 U.S. 276 (1961). Those cases make it clear that the Supreme Court, by reviewing the overall activities of the company, determines whether a company generally engaged in interstate commerce has "localized" its business in a particular state so as to submit itself to regulation.

The United States Supreme Court has held that a state may deny a foreign corporation the right of access to the state courts even though the corporation may be engaged in interstate commerce at the time. *Eli Lilly & Co.* v. *Sav-On-Drugs, Inc.*, supra. In the *Lilly* case, New Jersey had enacted a

statute substantially the same as the Arkansas statute. In upholding the right of New Jersey to require foreign corporations to register in the state, it was pointed out that a state does not have such power over purely interstate transactions. The opinion went on to state that the Commerce Clause does not prevent states from enacting statutes relating to foreign and interstate commerce. However, the state statute must not be a burden on interstate commerce and must be general in scope. *Union Brokerage Co.* v. *Jensen,* supra. *Union* declared that the state and federal functions in such matters may move freely within the orbits of their respective purposes without impinging upon one another. The *Union* opinion further stated that a state has a legitimate interest in protecting its citizens who have dealings with foreign corporations and the Commerce Clause does not preempt appropriate legislation by the state.

What constitutes interference in interstate commerce is a question of fact to be decided in each case. The concluding paragraph in *Union* stated:

> The Commerce Clause does not deprive Minnesota of the power to protect the special interest that has been brought into play by Union's localized pursuit of its share in the comprehensive process of foreign commerce. To deny the States the power to protect such special interests when Congress has not seen fit to exert its own legislative power would be to give an immunity to detached aspects of commerce related to the objectives of the Commerce Clause. By its own force that Clause does not imply relief to those engaged in interstate or foreign commerce from the duty of paying an appropriate share for the maintenance of the various state governments. Nor does it preclude a State from giving needful protection to its citizens in the course of their contacts with businesses conducted by outsiders when the legislation by which this is accomplished is general in its scope, is not aimed at interstate or foreign commerce, and involves merely burdens incident to effective administration.

In the present case it is clear that the appellant did not demonstrate that its operations were of such nature as to preclude the State from exercising its right to require the appellant to

comply with the Wingo Act. Nothing presented by the appellant or, for that matter, by the appellee shows that the appellant was entitled to the protection of the Commerce Clause. To have the advantage of that protection and to avoid application of § 64-1202 it was incumbent upon the appellant to show that despite its having done business here it had not so "localized" its business in the sense referred to in the United States Supreme Court cases cited above.

Affirmed.

HICKMAN, and HAYS, JJ., dissent.

GLAZE, J., not participating.

DARRELL HICKMAN, Justice, dissenting. I dissent because in my judgment the Wingo Act should not be applied in this case.

The Wingo Act is a statute, penal in nature, that prohibits a foreign corporation from enforcing a contract *made* in this state. The act cannot apply to interstate transactions for obvious reasons. There is the additional question of whether this appellant was "doing business in the State of Arkansas."

The appellee called an out-of-state company to initiate this agreement. There is no evidence that the appellant (the company's predecessor actually) regularly did business in Arkansas, maintained a sales staff here or even did a substantial portion of its business in Arkansas. It was brought out that the appellant was a national company. Therefore, we have a business transaction occurring in Arkansas only because one of our citizens brought an out-of-state firm into this state.

The documents themselves, while signed in Arkansas, provided expressly that the law of the State of New York would apply, and "[t]his agreement is subject to acceptance by the lessor at its offices in Schiller Park, Illinois."

The majority misunderstands the legal issue. The most significant question is whether the contract was *made* in Arkansas, and we should look at our cases dealing with this issue in connection with the Wingo Act. That is what the statute requires, and that usually means the place where the final act occurs.

Leflar discusses this law of the place of making in Leflar,

*American Conflicts Law*, 3rd ed. § 145, pp. 297, 298 (1977):

Since it is important, however, it sometimes becomes necessary to determine where the contract was made. Ordinarily this will not be difficult, but sometimes the acts of chaffering which constitute offer and acceptance are scattered over more than one state. The authorities are reasonably clear that, in this event, the contract is made at the time and place 'where the last act necessary to the completion of the contract was done—that is, where the contract first creates a legal obligation.' Frequently this is controlled expressly by terms insisted upon by the parties who either by offer or counteroffer designate particular acts as decisive to the completion of the contract. Thus an order blank furnished to traveling salesmen for use by customers may declare expressly that no contract is to arise until the order is approved at the home office, or an application for an insurance policy may state that the policy is not to take effect until the first premium is paid during the life and good health of the applicant. The place where such last decisive acts are done is normally the place where the contract is made. Negotiable instruments and deeds usually become legally effective by delivery, therefore the place of delivery is the place of contracting. An offer may contemplate acceptance by mail or telegraph, in which event it is usually held that the acceptance is effective and the contract is completed by the contemplated mailing of the letter or sending the telegraph of acceptance. If the law of the place where the accepting letter is mailed or other message sent declares for any reason that no contract is thereby completed, then the contract will be completed at the next step in the succession of events, which will be at the time and place of receipt of the acceptance by the offeror. The time and place at which an unconditional acceptance becomes effective, whether by voluntary act of the parties or by operation of law, is the time and place of making the contract.

In *Hough* v. *Continental Leasing Corp.*, 275 Ark. 340, 630 S.W.2d 19 (1982), a Wingo Act case, we said:

. . . The trial court was correct in finding that the contract

was made in Mississippi, where final acceptance occurred. As stated in *Goode* v. *Universal Plastics, Inc.*, 247 Ark. 442, 445 S.W.2d 893 (1969):

> . . . The rule is stated in Leflar's *American Conflicts Law* (1969), § 144 at page 353:
>
>> The authorities are reasonably clear that, in this event, the contract is made at the time and place 'where the last act necessary to the completion of the contract was done—that is, where the contract first creates a legal obligation.'
>
> The contract was therefore a Mississippi contract in interstate commerce and Continental may enforce it in the courts of Arkansas despite its status as a nonqualifying corporation. *Brown Broadcast, Inc.* v. *Pepper Sound Studio, Inc.*, 242 Ark. 701, 416 S.W.2d 284 (1967).

When we refer to *Goode* v. *Universal Plastics, Inc.*, 247 Ark. 442, 445 S.W.2d 893 (1969), relied on in *Hough*, we find a foreign corporation, not registered to do business in Arkansas, soliciting orders in Arkansas, for covers it manufactures for telephone books. The contract provided it was subject to acceptance by the Tennessee company and Tennessee law applied. We said:

> The solicitor of a contract may by its terms dictate the mode of acceptance by which legal obligations will arise thereunder. *Mechanics Lumber Co.* v. *Yates American Machine Co.*, 181 Ark. 415, 26 S.W.2d 80 (1930). The terms of the instrument before us make it clear that no contract came into being until acceptance by appellee at its home office in Tennessee. Upon approval in Tennessee 'the last act necessary to completion of the contract was done.' The contract was therefore a Tennessee contract and appellee may enforce it in the Arkansas courts despite its status as a nonqualifying corporation. *Brown Broadcast, Inc.* v. *Pepper Sound Studio, Inc., supra.*

The Wingo Act cannot be used to deny a foreign corporation access to our courts even if it was "doing business" in Arkansas, if the contract was not made in this state. That was the holding in *UPI* v. *Hernreich*, 241 Ark. 36, 406 S.W.2d 317 (1966). There,

we discussed the Wingo Act and how it should be applied:

> The statute (§ 64-1202) has two distinct penalty provisions. The first provision is a fine to be collected against any non-domesticated foreign corporation that does business in this State. This fine provision applies regardless of where any contract may have been made, but the statute does not state that the assessment of the fine also makes the contract void. The second penalty provision in the statute is the one here in issue, and is contained in this statutory language: '. . . and as an additional penalty, any foreign corporation which shall fail or refuse to file its articles of incorporation or certificate as aforesaid, cannot make any contract in the state which can be enforced by it either in law or equity . . .' It will be observed that by the quoted language the courts of this State are closed to any non-domesticated foreign corporation only when seeking to enforce any contract made in this State. So the place of the making of the contract becomes most material in the case at bar, assuming any intrastate commerce is involved and that any such would taint the entire transaction.

The court concluded:

> We have repeatedly held that § 64-1202 is a penal statute and must be strictly construed in favor of those against whom the penalty is sought. *Alexander Film Co.* v. *State*, 201 Ark. 1052, 147 S.W.2d 1011; *Murray Tool Co.* v. *State*, 203 Ark. 874, 159 S.W.2d 71. In thus strictly construing the statute in favor of the appellant, we must conclude that the statute closes the doors of the State courts to a non-domesticated foreign corporation only on those actions involving contracts *made in this State.*

The majority does not really decide this case on the question of where the contract was made; rather it goes off on the question of interstate commerce, which is only one aspect of the question. The Wingo Act is entirely penal in nature—it denies irrevocably a corporation the right to litigate its claim. Therefore, it is important to first strictly construe the statute against the one using it.

This is what we said in *Leenerts Farms* v. *Cranco*, 265 Ark. 359, 578 S.W.2d 229 (1979), about applying the Wingo Act:

> In *Alexander Film Company* v. *State, Use of Phillips County*, 201 Ark. 1052, 147 S.W.2d 1011 (1941), we pointed out that the Wingo Act, Ark. Stat. Ann. §§ 64-1201 and 64-1202 (Repl. 1966), is a penal statute which must be strictly construed in favor of those against whom the penalty is to be imposed. Furthermore, in construing a contract to determine whether it is valid or invalid, we find in 17 Am. Jur. 2d Contract § 254 the following:
>
> > 'It is a general principle that where a contract is fairly open to two constructions, by one of which it would be lawful and the other unlawful, the former will be adopted. Thus, if a contract is capable of a construction which will make it valid, legal, effective, and enforceable, it will be given that construction if the contract is ambiguous or uncertain. A construction which renders the contract valid is preferred to one which renders it invalid, and it will not be construed so as to be invalid unless that construction is required by terms of the agreement in the light of the surrounding circumstances.'
>
> When the record in this case is considered in the light of the penal nature of the Wingo Act and the principle that a contract should be construed where possible to make it valid, we must hold that the trial court erred in ruling that the contract sued upon was an Arkansas contract within the provision of Ark. Stat. Ann. §§ 64-1201 and 64-1202 (Repl. 1966). The fact that the contract for purchase of the real estate was to be closed in Arkansas would not make a contract entered into out of the State of Arkansas invalid under Ark. Stat. Ann. § 64-2102 (Repl. 1966).

This contract was not made in Arkansas and according to most of our cases the Wingo Act should not apply. I regret our decision in this case only further confuses the question. I would reverse the judgment of the trial court and remand the matter for a trial.

HAYS, J., joins in the dissent.