Ray DICKSON and Dickson Farms, Inc. *v.* DELHI SEED COMPANY

CA 88-139 760 S.W.2d 382

Court of Appeals of Arkansas
Division I
Opinion delivered November 23, 1988

84

*Wilbur Botts, P.A.,* and *Malcolm R. Smith, P.A.,* for appellant.

*Russell D. Berry,* for appellee.

DONALD CORBIN, Chief Judge. This appeal comes to us from Arkansas County Circuit Court. Appellants, Ray Dickson and Dickson Farms, Inc., appeal from the judgment in favor of appellee, Delhi Seed Company, filed July 27, 1987, and the court's February 5, 1988, order denying their motion for a judgment notwithstanding the verdict and new trial. Appellee cross-appeals from the court's February 5, 1988, order granting appellants' motion for remittitur. We affirm in part, reverse in part and remand.

Appellee, a Louisiana corporation, initiated this action in Arkansas County Circuit Court on August 2, 1985. Appellee alleged that on May 17, 1985, appellee's president, Mike Merrit, after receiving a call from Ray Dickson, met with Mr. Dickson and reached an agreement that appellee would purchase appellants' entire oat production at harvest from approximately 200 acres of land at $2.25 per bushel. Appellee also alleged that it mailed a written confirmation of the agreement to appellants the next business day and contracted to re-sell the oats to a third party. Appellee contends that appellants breached the contract by selling their oats upon harvest to another seed company. Appellants denied that the parties had reached such an agreement, and filed motions to dismiss the action asserting both a statute of frauds defense and a defense predicated upon the Wingo Act. Both motions were denied. The case was tried to a jury on July 15, 1987. The jury returned a verdict in favor of appellee and against each appellant in the sum of $35,000, which appellee stipulated to be joint and several liability against the

appellants. Following a judgment entered on the jury verdict, appellants moved for a judgment notwithstanding the verdict, a new trial, and for a remittitur. By order dated February 5, 1988, the trial court granted appellants' motion for remittitur, reducing the judgment by one-third, and denied the other motions. From the judgment and subsequent order comes this appeal.

For reversal, appellants raise the following five arguments: (1) The trial court erred in failing to dismiss the plaintiff's complaint under the provisions of the Wingo Act; (2) the trial court erred in failing to dismiss the plaintiff's complaint under the provisions of the Statute of Frauds; (3) the trial court erred in admitting evidence of the market price of processed oats, as combine run bob oats were the subject of this controversy, and further erred in admitting evidence of anticipated profits, incidental or consequential damages; (4) the trial court erred in failing to order a new trial when the jury returned a verdict which demonstrated that they had utilized evidence of anticipated profits in computing damages, which measure was not a proper measure of damage; and (5) the court erred in failing to direct a verdict on the basis of the proof of damages being speculative. On cross-appeal, appellee contends that the trial court erred in reducing the jury verdict by one-third. The points will be addressed in order.

Appellants first argue that the trial court erred in failing to dismiss appellee's complaint because appellee failed to comply with the provisions of the Wingo Act, more specifically Arkansas Code Annotated § 4-27-104 (1987).

Rule 12(b) of the Arkansas Rules of Civil Procedure provides that every defense, in law or fact, shall be asserted in responsive pleadings but states that certain enumerated defenses may be raised by motion. Failure to state facts upon which relief may be granted is a defense which may be raised by motion. Ark. R. Civ. P. Rule 12(b)(6). Prior to trial appellants moved to dismiss the complaint based upon the Wingo Act. Although appellants failed to characterize the motion as a 12(b)(6) motion, it must be construed as such. Further the rule provides that "[i]f, on a [12(b)(6) motion], matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided

in Rule 56 . . . ." *See also, Maas* v. *Merrell Assocs., Inc.,* 13 Ark. App. 240, 682 S.W.2d 769 (1985). The record reflects that prior to the court's ruling on the motion, trial briefs were submitted as was an affidavit from the president of appellee corporation relating to the Wingo Act defense. It does not appear that these matters were excluded by the court in its consideration of the motion and therefore the motion must be viewed as one for summary judgment. Summary judgment is appropriate only where the pleadings, depositions and answers to interrogatories, together with the affidavits, show there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. *Moeller* v. *Theis Realty, Inc.,* 13 Ark. App. 266, 683 S.W.2d 239 (1985). In order to set up the Wingo Act as a defense, the party must show that the foreign corporation is doing business in Arkansas. *See North American Phillips Commercial Elecs. Corp.* v. *Gaytri Corp.,* 291 Ark. 11, 722 S.W.2d 270 (1987). Whether a corporation is doing business in Arkansas is a question of material fact, and neither Rule 12 nor Rule 56 of the Arkansas Rules of Civil Procedure authorizes the trial court to summarily dismiss the complaint where an issue of material fact remains to be resolved. *See Maas,* 13 Ark. App. at 244, 682 S.W.2d at 711. We find no error in the court's failure to dismiss the complaint.

Although appellants' point for reversal is limited to the trial court's failure to dismiss the complaint, both parties submitted their briefs on the substantive issues of the Wingo Act provisions and we, therefore, dispose of those arguments as well.

 The Wingo Act requires that a foreign corporation doing business in Arkansas file a copy of its articles of incorporation or similar instrument, together with a statement of its assets and liabilities, and capital employed in the state, in the office of the Secretary of State. Ark. Code Ann. § 4-27-104(a) (1987). As a penalty for failing to comply with the provisions, the foreign corporation is prohibited from enforcing a contract made in this state. Ark. Code Ann. § 4-27-104(c) (1987).

 The Arkansas Supreme Court in *North American Phillips Commercial Elecs. Corp.* v. *Gaytri Corp.,* 291 Ark. 11, 722 S.W.2d 270 (1987) enunciated a two-part test to determine whether the threshold requirements for application of the penalty

provisions of the Wingo Act have been met. First, it must be demonstrated that the contract was made by a non-qualifying foreign corporation which was "doing business" in the state; and second, it must be shown that the particular contract in question was made in Arkansas. *Id.* at 13, 722 S.W.2d at 271. Further, if it is raised as a defense, the court must consider whether the Commerce Clause of the United States Constitution precludes application of the sanctions of the penalty provision. *Id.*

 Appellee does not dispute that the contract was made in Arkansas. However, it contends that it was not "doing business" in Arkansas and further that the transaction is protected by the Commerce Clause. We agree. The supreme court has said that "a corporation is doing business in Arkansas within the meaning of the Wingo Act when it transacts some *substantial* part of its *ordinary* business in this state." *Worthen Bank & Trust Co.* v. *United Underwriters Sales Corp.,* 251 Ark. 454, 474 S.W.2d 899 (1971) (emphasis original). Mike Merrit, president of appellee corporation, filed an affidavit stating among other things that the ordinary business of Delhi Seed was to purchase rough grain, process the grain at its Louisiana plant, store the grain in Louisiana and re-sell it throughout the South; that the only activity with regard to this transaction was to contract for the purchase of rough grain; and that appellee sells only five percent of its finished product in Arkansas and buys only ten percent of its rough grain in Arkansas. In the absence of contrary evidence presented by appellants, the trial court could have concluded that the evidence was insufficient to establish that appellee was "doing business" in Arkansas, and that one of the threshold requirements for application of the Wingo Act had not been met.

 Even had the threshold requirements been met, the Commerce Clause would have precluded application of the Act in the case at bar. Although the state law of Arkansas is applied to determine the threshold application of the act to appellee's activities, characterization of the activity as interstate commerce for purposes of testing the validity of the application against the Commerce Clause is a question of federal law. *Uncle Ben's Inc.* v. *Crowell,* 482 F. Supp. 1149 (E.D. Ark. 1980). The factual setting in this case is remarkably similar to that of *Uncle Ben's.* For purposes of the Commerce Clause analysis, the two cases are

indistinguishable and therefore, the Commerce Clause would have precluded application of the Wingo Act in any event.

Next, appellants argue that the trial court erred in failing to dismiss the plaintiff's complaint under the Statute of Frauds. Arkansas Code Annotated § 4-2-201 (1987) provides in pertinent part:

> (1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker . . . .

> (2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it had reason to know of its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten [10] days after it is received.

Appellee contends that the Statute of Frauds defense is not applicable because it sent a confirmation of the contract as provided for in subsection (2) above, which was not objected to in writing. Appellants contend the confirmation was insufficient because they had no reason to know that the contract would contain terms relating to availability as did the confirmation. However, we need not determine whether the confirmation was sufficient. While it appears that we are the only jurisdiction which so holds, both parties have overlooked the fact that under Arkansas law a farmer is not a merchant. *Cook Grains* v. *Fallis*, 239 Ark. 962, 395 S.W.2d 555 (1965). The code specifically provides that a confirmation is valid only between merchants, and thus would not apply to take the contract out of the Statute of Frauds in this case.

Appellee argues alternatively that appellants should be estopped from asserting the Statute of Frauds defense. In *Ralston Purina Co.* v. *McCollum*, 271 Ark. 840, 611 S.W.2d 201 (Ark. App. 1981), we held that because the Uniform

Commercial Code states that the principles of law and equity, including estoppel, supplement the code unless displaced by a particular provision, the doctrine of promissory estoppel may be asserted by one party to an oral contract for the sale of goods, to prevent the other party from asserting the defense of the Statute of Frauds.

A promise is binding if an injustice can be avoided only by enforcing the promise, if the promisor should reasonably expect to induce action or forbearance of a definite and substantial character by the promissee, and if that action is induced. *Id.* at 844, 611 S.W.2d at 203. It is well settled that whether estoppel is applicable is an issue of fact to be decided by the trier of fact. *Askew Trust* v. *Hopkins*, 15 Ark. App. 19, 688 S.W.2d 316 (1985). As previously discussed, because a question of fact existed, summary dismissal of the complaint was not appropriate. We find no error in the trial court's failure to dismiss appellee's complaint.

We note here that the remainder of appellants' points for reversal, although numbered separately, were grouped together for argument making it difficult to determine the specific argument with regard to each point. We address appellants' arguments as we understand them.

Appellants' third point alleges that the trial court erred in admitting evidence of the market price of processed oats since combine run (unprocessed) bob oats were the subject of the alleged contract. At trial appellee's president, Mike Merrit, testified that upon discovery of appellants' intent not to deliver the oats under the contract, he attempted to purchase oats to replace them because he had contracted to re-sell the oats, after processing them, to a third party. He testified that due to the oat shortage in 1985, he was unable to find unprocessed (combine run) oats and instead purchased processed oats to fulfill his contractual obligations to the third party. He testified that the only oats he could find for sale were processed oats at a cost of $4.20 per bushel. Appellants objected that the price of processed oats was irrelevant but the court overruled the objection. On cross-examination, Mr. Merrit testified that he knew Arkansas County Seed Company had in excess of 150,000 bushels of unprocessed oats from which appellee could have possibly pur-

chased replacement oats, but did not attempt to do so because he was not on the best of terms with Mr. Butler, who was apparently Arkansas County Seed's owner. Testimony was also adduced from other witnesses that they had no combine bob oats for sale and that the cost of processed oats in 1985 ranged from $3.75 per bushel to $4.25 per bushel.

Arkansas Code Annotated § 4-2-711 (1987) provides generally that where the seller fails to make delivery the buyer may cancel and may in addition "cover" and have damages under § 4-2-712 or recover damages for non-delivery as provided under § 4-2-713. Comment 5 to § 2-713 of the Uniform Commercial Code, identical to our provision, states that the remedy for non-delivery is completely alternative to cover and applies only to the extent that the buyer has not covered. Therefore, because appellee chose to purchase substitute goods its remedy was limited to that of § 4-2-712 unless the purchase did not constitute "cover." Section 4-2-712(1) provides that a buyer may "cover" by making in good faith and without unreasonable delay a reasonable purchase of or contract to purchase goods in substitution for those due from the seller. If the buyer "covers", he may recover from the seller the difference between the cost of cover and the contract price together with any incidental or consequential damages but less expenses saved in consequence of the seller's breach. Ark. Code Ann. § 4-2-712(2) (1987). The cost of the processed oats which appellee chose to purchase in substitution of those not delivered was admissible in an attempt to establish damages for cover. Although the substituted goods were different in kind from those contracted for, it was for the jury to determine whether the purchase of processed oats was "a reasonable purchase of goods in substitution for those due from the seller."

Appellants also contend in their third point that the court erred in admitting evidence of incidental or consequential damages and anticipated profits. Incidental or consequential damages are recoverable items of damages under both section 4-2-712 and section 4-2-713. Subject to the evidentiary rules of admissibility, evidence relating to both items is admissible. Appellants argue that evidence of consequential damages was not admissible for four reasons, the first being that the court did not instruct on that particular element of damages. We observe at

this point that the jury was given only one instruction regarding the calculation of damages which did not include the elements of consequential or incidental damages. However, the absence of a proper jury instruction on the matter does not affect the admissibility of the evidence. Appellants failed to offer a jury instruction encompassing or defining consequential damages and cannot now be heard to complain that evidence was before the jury without a proper instruction regarding its use.

Appellants also argue that evidence of consequential damages was erroneously admitted because appellee testified that appellants did not know of his intention to resell and testified that his contract with a third party for ten thousand bushels was terminated without suffering damages, and because the damages could have reasonably been prevented by cover. Appellants seem to argue that the evidence was not admissible because it did not meet the definition of consequential damages. Consequential damages include any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not have reasonably been prevented by cover or otherwise. Ark. Code Ann. § 4-2-715(2)(a) (1987). Whether an item of damage falls within this category is dependent upon factual determinations which are to be made by the trier of fact. The trial court properly admitted the evidence for consideration by the jury. Likewise, anticipated profits may be recoverable as consequential damages if the jury finds that the losses resulted from the buyer's general or particular requirements of which the seller had reason to know and could not have been prevented by cover. Consequential damages or anticipated profits may be recovered if the evidence establishes the alleged damages with reasonable certainty. *See Traylor* v. *Huntsman*, 253 Ark. 704, 488 S.W.2d 30 (1972). We find no error in admitting evidence of incidental or consequential damages, including anticipated profits.

Appellants next argue that the court erred in failing to order a new trial when the jury returned a verdict which demonstrated that it had utilized evidence of anticipated profits in computing damages because it was not a proper measure of damage. If the trial judge denies a motion for a new trial, the court on appeal need determine only if the verdict is supported by substantial evidence. *Ferrell* v. *Whittington*, 271 Ark. 750, 610

S.W.2d 572 (1981). As discussed with regard to point three, anticipated profits are recoverable as a consequential damage of the seller's breach if the jury finds that they meet the requirements of § 4-2-715(2)(a) and are established with reasonable certainty. Furthermore, the jury verdict was not submitted on interrogatories, and we cannot say that the jury utilized evidence of anticipated profits in reaching their verdict. There was substantial evidence presented at trial from which the jury could have concluded that the parties entered into an enforceable contract and that appellants breached the contract. In our opinion, the jury was not only given an incomplete set of instructions but the one given was erroneous because it encompassed the elements of damage for non-delivery rather than cover and omitted incidental or consequential damages. However, neither party raised the issue on appeal, and we consider the verdict in light of the instruction given. The jury was instructed that if they found a breach of contract, the measure of damages was the difference in the market price at the time appellee learned of the breach and the contract price, less expenses saved in consequence of the seller's breach. Because the instruction failed to specify whether the computation was based upon market price of processed oats or market price of combine run bob oats, the jury was free to use the market price of processed oats in their calculation of damages. Had the jury followed the instruction and interpreted it to require the market price of processed oats, they could have arrived at a damage figure in excess of $30,000, using the evidence produced during the trial regarding the contract price and expenses saved. Furthermore, a verdict need not correspond in amount to the proof adduced by either party. *Garrison Properties, Inc.* v. *Branton Constr. Co.*, 253 Ark. 441, 486 S.W.2d 672 (1972); *Baumeister* v. *City of Fort Smith*, 23 Ark. App. 102, 743 S.W.2d 396 (1988). There was substantial evidence to support the trial court's denial of appellants' motion for a new trial.

Finally, appellants argue that the trial court erred in failing to direct a verdict on the basis that the proof of damages was speculative. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Walker* v. *State*, 13 Ark. App. 124, 680 S.W.2d 915 (1984). A directed verdict is given only in cases where no issues of fact exist, and this court will review the

evidence in the light most favorable to the appellee. *Lum* v. *State*, 281 Ark. 495, 665 S.W.2d 265 (1984). Appellants challenge the sufficiency of the proof as to damages, alleging specifically that the opinion testimony of Mike Merrit was speculative. Mr. Merrit testified that had he been able to purchase unprocessed oats, process them, and sell them, he would have made $2.00 per bushel. Even if we were to agree that this evidence was speculative, there was substantial other evidence from which the jury could have determined damages. Both parties submitted evidence as to the market price of unprocessed oats at the time of the breach, appellee submitted evidence as to the market price of processed oats, both parties testified regarding the price under the subject contract, and appellee offered evidence regarding his expenses saved because of the breach. We find no error in the court's denial of appellants' motion for a directed verdict on the grounds that the proof of damages was speculative. The direct appeal is affirmed in all respects.

Appellee alleges on cross-appeal that the trial court erred in reducing the jury verdict by one-third. We agree.

Following the trial, appellants moved for a judgment notwithstanding the verdict, new trial and remittitur. The trial court denied the first two motions but ordered that the verdict be reduced by one-third. In his letter opinion accompanying the order, the trial judge stated:

> The jury apparently attempted to award the most damages it possibly could and the court has no problem with that. But, to award the plaintiff damages on the landlord's share of the crop would offend anyone's sense of justice. The verdict will therefore be reduced by one-third.

Courts of record have the inherent power to reduce jury awards to conform to the established facts. *Morrison* v. *Lowe*, 274 Ark. 358, 625 S.W.2d 452 (1981); *Dierks Lumber & Coal Co.* v. *Noles*, 201 Ark. 1088, 148 S.W.2d 650 (1941). However, a belief by a trial court that damages are excessive is not, standing alone, a sufficient ground for ordering a reduction because if that were the standard, the great discretion of the jury would be abrogated. *Morrison*, 274 Ark. at 364-65, 625 S.W.2d at 455.

■ The trial court reduced the jury's award of damages on the basis that the parties' oral contract reserved to the appellants' landlords one-third of the crops grown. While the trial court may reduce the verdict to conform to the facts, we believe his factual finding that the contract reserved certain rights to the appellants' landlords was clearly erroneous. In their motion for remittitur, appellants contended that they only contracted to sell two-thirds of the acreage production because one-third of the oats were owned by other parties. However, Frank Ellis, trust officer of DeWitt Bank and Trust, testified that the bank's trust department managed the other one-third interest for the corporations which owned the rights to the landowners' share of production. He further testified that Mr. Dickson contacted him regarding the sale for the oat crop to appellee and asked him if he was willing to sell the oats. Mr. Ellis testified as follows:

> I told him that I . . . with the market like it was I thought, ah, two and a quarter was a fair price. And that we couldn't beat it trying to store them and handle them and haul them around and get them stored. And whatever he did, ah, if he sold them *to sell our part too.*

Appellants had express authority to sell the entire crop to appellee. In light of the evidence, the trial court abused his discretion in ordering a reduction based upon an erroneous factual determination. The order of remittitur is reversed and the cause remanded with instructions to reinstate the judgment.

Affirmed in part, reversed in part and remanded.

COOPER and MAYFIELD, JJ., agree.